# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 24, 2009      Decided January 12, 2010

No. 08-1356

PETALUMA FX PARTNERS, LLC AND RONALD SCOTT
VANDERBEEK, A PARTNER OTHER THAN THE TAX MATTERS
PARTNER,
APPELLANTS

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLEE

———

Appeal from the United States Tax Court

———

*Edward M. Robbins Jr.* argued the cause and filed the briefs for appellants.

*Sheldon M. Kay*, *Thomas A. Cullinan*, and *Julie P. Bowling* were on the brief for *amicus curiae* AJF-1, LLC in support of appellants.

*Joan I. Oppenheimer*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Gilbert S. Rothenberg*, Acting Deputy Assistant Attorney General, and *Richard Farber*, Supervisory Attorney. *Judith A. Hagley*, Attorney, entered an appearance.

Before: SENTELLE, *Chief Judge*, and GRIFFITH and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*:  Petaluma FX Partners, LLC appeals from the Tax Court's decision that it had jurisdiction over several partnership-level determinations and that valuation misstatement penalties applied.  Specifically, the Tax Court held that it had jurisdiction to determine that Petaluma was a sham, lacked economic substance, and should be disregarded for tax purposes; that Petaluma's partners had no outside basis in the disregarded partnership; and that the gross valuation misstatement penalty applied.  *Petaluma FX Partners, LLC v. Comm'r*, 131 T.C. 9, 2008 WL 4682543 (U.S. Tax Ct. Oct. 23, 2008).  For the reasons explained below, we affirm the Tax Court's holding that it had jurisdiction to determine that Petaluma was a sham and should be disregarded for tax purposes, but reverse its holding that it had jurisdiction to determine that Petaluma's partners had no outside basis in the partnership.  In addition, we set aside the Tax Court's holding that it had jurisdiction to determine whether accuracy-related penalties applied and that the valuation misstatement penalties did apply in this case.

## I.  Background

## A.  Factual Background

This case involves a "Son of BOSS" tax shelter.  Like many of its kin, this tax shelter employs a series of transactions to create artificial financial losses that are used to offset real financial gains, thereby reducing tax liability.  In 2000, the Internal Revenue Service ("IRS") identified Son of BOSS tax shelters as abusive transactions.  I.R.S. Notice 2000-44, 2000-2

C.B. 255; *see also Desmet v. Comm'r*, 581 F.3d 297, 299 (6th Cir. 2009). The facts of this case illustrate how this shelter works. We rely primarily on the Tax Court's description of the facts, which is undisputed. *Petaluma*, 2008 WL 4682543, at *1–3. Petaluma, a purported partnership, was formed on August 18, 2000. Its ostensible purpose was to engage in foreign currency option trading. On October 10, 2000, Ronald Thomas Vanderbeek and Ronald Scott Vanderbeek (collectively, "the Vanderbeeks") each contributed pairs of offsetting long and short foreign currency options to become partners of Petaluma. The Vanderbeeks increased their adjusted bases in Petaluma to reflect the long options they contributed, but did not reduce those bases to reflect Petaluma's assumption of their short options. On December 12, 2000, the Vanderbeeks withdrew from Petaluma, which fully liquidated their interests in the partnership by distributing cash and shares of Scient stock[1] to them. In keeping with 26 U.S.C. § 732(b), they took adjusted bases in the distributed stock equivalent to their adjusted bases in Petaluma immediately prior to the distribution. On December 26, 2000, the Vanderbeeks sold their Scient stock. Given their inflated adjusted bases in the stock, these sales created substantial short-term capital losses that the Vanderbeeks subsequently claimed on their 2000 federal income tax returns. For example, Ronald Thomas Vanderbeek sold his Scient stock for $122,528 and claimed a short-term capital loss of $17,776,360, which conveniently offset $14,472,420 in long-term capital gains. Likewise, Ronald Scott Vanderbeek sold his Scient stock for $39,410 and claimed a resulting short-term capital loss of $7,631,542, thereby offsetting long-term capital gains of $6,191,778.

---

[1] The stock is not further identified in the parties' submissions.

**B.  Statutory Background**

Although partnerships do not pay federal income taxes, they must file annual informational returns reporting income, loss, deductions, and credits.  26 U.S.C. §§ 701, 6031(a); Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i).  The partners are then responsible for reporting their distributive shares of the partnership's income or loss on their individual federal income tax returns.  26 U.S.C. §§ 701–702, 704.  Congress established the current framework for adjudicating partnership-related tax matters in the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, § 402, 96 Stat. 324, 648-67 (codified as amended at 26 U.S.C. §§ 6221–6232).  Prior to TEFRA, all partnership items were determined at the individual taxpayer level, which often required duplicative proceedings for different partners and sometimes resulted in inconsistent treatment of partnership items from partner to partner.  Under TEFRA, partnership items are now determined in unified partnership-level audit and judicial proceedings.  26 U.S.C. § 6221.  When the IRS disagrees with how a partnership return reports partnership items, it may commence an administrative proceeding by issuing a notice of final partnership administrative adjustment ("FPAA") to the partners.  § 6223(a), (d).  Once an FPAA is mailed, the partnership's tax matters partner has 90 days to file a petition for readjustment of partnership items.  § 6226(a).  If the tax matters partner does not file within that period, any other partner who received the FPAA has an additional 60 days to file a petition.  § 6226(b)(1).  Once a petition has been filed, the reviewing court has jurisdiction to determine all partnership items for the partnership taxable year addressed by the FPAA. § 6226(f).

### C. The FPAA and the Tax Court's Decision

On April 2, 2001, Petaluma filed a Form 1065 partnership return for its 2000 taxable year. The Commissioner issued an FPAA to the Petaluma partners on July 28, 2005. The FPAA disallowed all partnership items reported on Petaluma's return, reducing them from the amount Petaluma originally claimed to zero. The FPAA also listed "Outside Partnership Basis," which was not originally reported on Petaluma's partnership return, and reduced its value from $24,943,505 to $0. In addition, it included a section titled "EXHIBIT A - Explanation of Items," which determined that Petaluma's existence as a partnership had not been established, that it was formed solely for tax avoidance, that it was a sham and lacked economic substance, and that it should therefore be disregarded for tax purposes. The Explanation also determined that Petaluma's partners "have not established adjusted bases in their respective partnership interests in an amount greater than zero." Finally, the Explanation determined that various accuracy-related penalties set forth in 26 U.S.C. § 6662(a) applied to all underpayments of tax attributable to these adjustments. On December 30, 2005, Ronald Scott Vanderbeek, a Petaluma partner who was not the tax matters partner, filed a petition for readjustment with the Tax Court.

In the Tax Court, Petaluma and the Commissioner entered a settlement of stipulated issues in which Petaluma conceded that the reduction of the line items in its partnership return to zero was appropriate. Petaluma retained just two arguments—first, that the Tax Court lacked jurisdiction to consider certain issues in the FPAA, and second, that the valuation misstatement penalties did not apply. Both parties moved for summary judgment, and the Tax Court granted summary judgment for the Commissioner on October 23, 2008.

In its opinion, the Tax Court first held that it had jurisdiction to determine whether Petaluma should be disregarded for tax purposes. It reasoned that "the determination whether Petaluma is a sham, lacks economic substance, or otherwise should be disregarded for tax purposes is a partnership item over which we have jurisdiction." *Petaluma*, 2008 WL 4682543, at \*9. Second, it held that because Petaluma had been disregarded for tax purposes, the court had jurisdiction to determine that the partners' outside bases in the partnership were zero because "there can be no adjusted basis in a disregarded partnership." *Id.* at \*10. Third, the court held that it had jurisdiction over the accuracy-related penalties because § 6226(f) gave it jurisdiction to determine "the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item." *Id.* at \*11–12 (quoting 26 U.S.C. § 6226(f)). Fourth, the court held that "the gross valuation [misstatement] penalty applies when the adjusted basis of property is reduced to zero because a transaction was disregarded as a sham or lacking economic substance and the taxpayer claims an adjusted basis in the property of a greater amount." *Id.* at \*14. Petaluma timely appealed.

## II. Analysis

### A. Jurisdiction and Standard of Review

Petaluma filed a petition for readjustment of partnership items with the Tax Court under 26 U.S.C. § 6226. The Tax Court's decisions concerning such petitions are generally reviewed by the U.S. Court of Appeals for the circuit in which the partnership's principal place of business is located. § 7482(b)(1)(E). When a partnership has no principal place of business, as is the case here, the Tax Court's decision "may be reviewed by the Court of Appeals for the District of Columbia." § 7482(b)(1). We review the Tax Court's decisions "in the same

manner and to the same extent as decisions of the district courts in civil actions tried without a jury." § 7482(a)(1). Since the facts of this case are undisputed, we review the questions of law it presents de novo. *Andantech L.L.C. v. Comm'r*, 331 F.3d 972, 976 (D.C. Cir. 2003).

## B.  Disregarding the Partnership

Petaluma contends that the Tax Court erred in holding that it had jurisdiction to determine that the partnership was a sham, lacked economic substance, and should be disregarded for tax purposes. Under TEFRA, a court considering a petition for readjustment has "jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item." 26 U.S.C. § 6226(f). Petaluma argues that the Tax Court had no jurisdiction to determine that it was a sham and lacked economic purpose because that determination was not a "partnership item" within the meaning of § 6226(f). We disagree.

### (1)  Section 6233

The jurisdiction of the Tax Court over this case is governed by 26 U.S.C. § 6233. That section addresses instances in which a partnership return is filed, but the purported partnership either does not exist or is not actually a partnership. In those situations, § 6233 mandates that TEFRA's provisions still apply "to the extent provided in regulations." *Id.* The relevant regulations state that "[a]ny final partnership administrative adjustment or judicial determination . . . may include a determination that the entity is not a partnership for such taxable year." Temp. Treas. Reg. § 301.6233-1T(a). Under the

statutory authority of § 6233, this regulation explicitly authorized the Tax Court to determine that Petuluma was not a partnership for the 2000 taxable year.

### (2) Partnership Items

The next question raised by Petaluma's argument is whether the sham determination was a partnership item. The Internal Revenue Code states that "partnership item" means "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3). Thus a partnership item must be (1) "required to be taken into account . . . under any provision of subtitle A" and (2) identified by regulation as "more appropriately determined at the partnership level." *Id.* We conclude that the determination that Petaluma was not a valid partnership meets both elements of this test.

### (a) Required to Be Taken into Account Under Subtitle A

For the validity of a partnership to be a partnership item, it must be "required to be taken into account . . . under any provision of subtitle A," which is the subtitle concerning income taxes. We have little difficulty concluding that application of the income tax provisions of Subtitle A to the tax liability of a taxpayer who receives income from a purported partnership entails a determination of the validity of that partnership. As the Eighth Circuit has stated, "When filling out individual tax returns, the very process of calculating an outside basis, reporting a sales price, and claiming a capital loss following a partnership liquidation presupposes that the partnership was

valid." *RJT Investments X v. Comm'r*, 491 F.3d 732, 736 (8th Cir. 2007). Thus the first requirement of the test is met.

### (b) More Appropriately Determined at the Partnership Level

In arguing that the second requirement is not met, Petaluma urges that the term "item" should be interpreted narrowly, arguing that it only includes accounting elements such as income, deductions, credit, gain, loss, and basis. As Petaluma concedes, however, the Code does not define "item." Moreover, Petaluma's attempt to cabin the meaning of "partnership item" ignores the statute's plain language authorizing the Secretary to promulgate regulations that flesh out the definition of that term. § 6231(a)(3). The regulations that fulfill that mandate give examples of partnership items that include "[t]he partnership's method of accounting, taxable year, and inventory method." Treas. Reg. § 301.6231(a)(3)-1(b). These examples make clear that the meaning of "partnership item" extends well beyond technical accounting elements.

Furthermore, the regulations state that the definition of partnership item includes "the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." Treas. Reg. § 301.6231(a)(3)-1(b). The determination that a valid partnership exists is a *sine qua non* for determining the amount and characterization of all other partnership items. For example, determining whether there is a valid partnership necessarily controls whether there can be partnership income, partnership gain, partnership losses, and so forth. This regulation establishes that the validity of a partnership is "more appropriately determined at the partnership level," thereby meeting the second requirement of the partnership item test. Thus the determination that a partnership is a sham and lacks

economic substance is a partnership item because it is a legal determination that underlies the amount and characterization of other partnership items. *RJT Investments X*, 491 F.3d at 737–38; *Keener v. United States*, 551 F.3d 1358, 1366 (Fed. Cir. 2009) (stating that "the nature of a partnership's transaction—and, specifically, whether a partnership transaction is a 'sham'—is a partnership item").

Logically, it makes perfect sense to determine whether a partnership is a sham at the partnership level. A partnership cannot be a sham with respect to one partner, but valid with respect to another. In addition, this conclusion is unsurprising given that this court has affirmed the Tax Court's determinations that a partnership should be disregarded for tax purposes on several prior occasions. *Andantech L.L.C. v. Comm'r*, 331 F.3d 972, 980 (D.C. Cir. 2003); *ASA Investerings P'ship v. Comm'r*, 201 F.3d 505, 506 (D.C. Cir. 2000). Based on § 6233, its implementing regulations, and the regulations elucidating the meaning of "partnership item," we hold that the determination that Petaluma was a sham, lacked economic substance, and should be disregarded for tax purposes is a partnership item. Given the Tax Court's jurisdiction under § 6226(f) to determine all partnership items, we conclude that the Tax Court acted within its jurisdiction when it determined that Petaluma was not a valid partnership and should be disregarded for tax purposes.

## C. Outside Basis

Petaluma also argues that the Tax Court erred in holding that it had jurisdiction to determine that Petaluma's partners had no outside basis in the disregarded partnership. An "outside basis" is the value assigned to a partner's investment in his or her partnership interest. *See American Boat Co. v. United States*, 583 F.3d 471, 474 n.1 (7th Cir. 2009). Under § 6226(f), a court reviewing a petition for readjustment of partnership

items only has jurisdiction to determine "partnership items." Under TEFRA, every item that is not a partnership item is considered a "nonpartnership item." § 6231(a)(4). Items that are affected by one or more partnership items are "affected items." § 6231(a)(5). Petaluma argues that outside basis is an affected item, not a partnership item, and therefore the Tax Court had no right to determine that its partners' outside bases were zero. We agree.

On appeal the Commissioner concedes that outside basis is not a partnership item in this case. Instead, he asserts that outside basis is an affected item whose elements are mainly or entirely partnership items. He maintains that the Tax Court had jurisdiction to state the "obvious conclusion" that a partner cannot have any basis in a disregarded partnership. The correctness of this conclusion is immaterial, however, for the question is not whether the Tax Court's determination was correct, but whether the Tax Court had jurisdiction to make that determination at all in this partnership-level proceeding.

Here, the partners' outside bases are affected items, not partnership items. Unlike partnership items, affected items are determined not at the partnership level, but at the individual partner level. Once the partnership items have been finalized, the IRS may make a corresponding "computational adjustment" to each partner's tax liability. 26 U.S.C. § 6230(c)(1)(A)(ii); § 6231(a)(6). When a computational adjustment directly increases a partner's tax liability, the IRS can assess the tax and the partner must bring a refund claim to challenge the computation. § 6230(c)(1). When a computational adjustment's effect indirectly increases a partner's tax liability and necessitates partner-level determinations concerning affected items, however, the IRS must issue a notice of deficiency, and normal deficiency procedures apply. § 6230(a)(2)(A)(i); *Desmet v. Comm'r*, 581 F.3d 297, 302 (6th Cir. 2009) (describing these

two assessment procedures).

Under § 6226(f), the Tax Court had jurisdiction to determine partnership items, but it did not have jurisdiction to determine affected items. We have already rejected the Tax Court's conclusion that outside basis was a partnership item in this case, and we likewise reject the Commissioner's contention that outside basis, although it is an affected item, could nonetheless be determined in the partnership-level proceeding. The fact that a determination seems obvious or easy does not expand the court's jurisdiction beyond what the statute provides. In other words, it does not matter how low the fruit hangs when one is forbidden to pick it. We hold that the Tax Court had no jurisdiction to determine that Petaluma's partners had no outside basis in the disregarded partnership. Finally, we note that nothing about the concept of outside basis indicates that it is more appropriately determined at the partnership level. If disregarding a partnership leads ineluctably to the conclusion that its partners have no outside basis, that should be just as obvious in partner-level proceedings as it is in partnership-level proceedings. Moreover, with the invalidity of the partnership conclusively established as a partnership-level determination, there is little danger that outside basis will receive inconsistent treatment at the individual partner level.

## D. Penalties

Petaluma also challenges the Tax Court's jurisdiction over accuracy-related penalties. The FPAA determined that "the accuracy-related penalty under Section 6662(a) of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of Petaluma FX Partners, LLC." Petaluma argues that since the Tax Court lacked jurisdiction to determine outside basis, it also lacks jurisdiction to determine that penalties apply with respect to outside basis

because those penalties do not relate to an adjustment to a partnership item. We agree. As the Tax Court noted, penalties were formerly determined at the partner level. *Petaluma*, 2008 WL 4682543, at *11; *American Boat Co. v. United States*, 583 F.3d 471, 478 (7th Cir. 2009). In the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1238, 111 Stat. 788, 1026, Congress amended § 6221 and § 6226(f) so that penalties relating to adjustments to partnership items would be determined at the partnership level. *American Boat Co.*, 583 F.3d at 478. Section 6221 now states that "the tax treatment of any partnership item *(and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item)* shall be determined at the partnership level" (emphasis added). Likewise, § 6226(f) now provides that a court reviewing a petition for readjustment has "jurisdiction to determine . . . *the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item*" (emphasis added).

The Tax Court held that its determination that Petaluma should be disregarded for tax purposes sufficed to give it jurisdiction over accuracy-related penalties. *Petaluma*, 2008 WL 4682543, at *12. We disagree. True, the determination that Petaluma should be disregarded for tax purposes is a partnership item, but the outside bases of the partners are affected items to be resolved at the partner level. Neither the Tax Court nor the Commissioner on appeal have forwarded any basis for the jurisdiction of the Tax Court over affected items in this proceeding. As it is not clear from the opinion, the record, or the arguments before this court that the penalties asserted by the Commissioner and ordered by the Tax Court could have been computed without partner-level proceedings to determine the affected-items questions concerning outside bases, we are unable to uphold the court's determination of the penalty issues. While it may be that some penalties could have been assessed

without partner-level computations, we cannot affirm a decision that has not yet been made. Therefore, we vacate the opinion of the Tax Court on the penalties imposition and computation. It may be that upon remand, a determination can be made for some portion of the penalties, but neither party has briefed that question before us.

### III. Conclusion

For the reasons set forth above, the decision of the Tax Court is affirmed in part and reversed in part. We affirm the decision of the court that it had jurisdiction to determine the sham nature of the partnership entity. We reverse the decision of the Tax Court insofar as it asserted jurisdiction over the outside-basis issues. We vacate and remand for further proceedings the Tax Court's decision on the penalties question.

*So ordered.*