Halpern, J., concurring: I concur and write separately only to add some small weight to what, in the main, I consider to be a forceful and persuasive analysis by Judge Beghe. I. Golsen Doctrine We are a court with nationwide jurisdiction in tax matters alone, and Congress expected that, in so far as we are able to do so, we set precedents for the uniform application of the tax law. Lawrence v. Commissioner, 27 T.C. 713, 718 (1957), rev’d, 258 F.2d 562 (9th Cir. 1958). Review of our cases, however, is not by a single Court of Appeals but is, variously, by the Courts of Appeals for the 11 numbered circuits and the Court of Appeals for the D.C. Circuit. See sec. 7482. Necessarily, we have had to consider what we should do when an issue comes before us a second time, after a Court of Appeals has reversed a prior Tax Court decision on the same point. In Lawrence v. Commissioner, 27 T.C. at 716-717, we determined that, while certainly we should seriously consider the reasoning of the reversing Court of Appeals, we ought not follow its decision if we believe it incorrect. In Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), aff’d, 445 F.2d 985 (10th Cir. 1971), we reconsidered and created a narrow exception (sometimes described as the Golsen doctrine) to the rule announced in Lawrence. We reasoned that, where a reversal would appear inevitable, because of the clearly established position of the Court of Appeals to which an appeal would lie, our obligation as a national court does not require a futile and wasteful insistence on our view. Lardas v. Commissioner, 99 T.C. 490, 494-495 (1992); Golsen v. Commissioner, 54 T.C. at 757. “[T]he logic behind the Golsen doctrine is not that we lack the authority to render a decision inconsistent with any Court of Appeals (including the one to which an appeal would lie), but that it would be futile and wasteful to do so where we would surely be reversed.” Lardas v. Commissioner, 99 T.C. at 495. Judge Beghe’s insightful consideration of the issues goes well beyond insistence on our view expressed in Petaluma FX Partners, LLC v. Commissioner, 131 T.C. 84 (2008), aff’d in part, rev’d in part and remanded, 591 F.3d 649 (D.C. Cir. 2010). In addition, in his concurring opinion Judge Wherry maintains that the Golsen doctrine does not bind our hands because the facts before us are distinguishable from the facts (indeed, the absence of facts) before the Court of Appeals for the D.C. Circuit in Petaluma FX Partners, LLC. I assume that the Judges joining or concurring in Judge Beghe’s opinion believe as I do that our effort will be neither futile nor wasteful. II. Judge Beghe’s Insight Judge Beghe’s insight is with respect to the consequence of determining that, for tax purposes, Tigers Eye Trading, LLC (Tigers Eye), is a sham. That of course does not necessarily mean that Tigers Eye was not properly organized as a Delaware limited liability company (L.L.C.), nor does it necessarily mean that it is not a business entity recognized for Federal tax purposes (I assume that Judge Beghe would say: “If in business, its business was acting as nominee and agent for its principals, pertinently, the Logan Trusts.”). It does mean, however, that the Logan Trusts (trusts), together with other members of Tigers Eye, did not for Federal income tax purposes join together as partners to invest in currency options so as to cause the trusts’ transactions with Tigers Eye (and Tigers Eye’s actions on their behalf) to be governed by the substantive provisions of the Internal Revenue Code (Code) governing partners and partnerships; i.e., subchapter K (“Partners and Partnerships”), chapter 1, subtitle A of the Code (subchapter K). Tigers Eye, however, was properly organized as a Delaware L.L.C.; it did receive the currency options from the trusts; it did sell the options, and it did purchase euro and shares of Xerox Corp. (currency and shares, respectively), which it did transfer to the trusts. The trusts, later in the same year, sold the currency and the shares, claiming large losses, which, because of the provisions of the Code governing trusts and their beneficiaries, flowed through to Mr. Logan. How then are we to explain all of those events (or at least those involving Tigers Eye), and what are the appropriate Federal income tax consequences? Moreover, because Tigers Eye filed a partnership return for 1999 (the year in which most all of the above described events occurred), although we may (and, indeed, shall) disregard the substantive partnership rules in subchapter K because of our finding Tigers Eye to be a sham, we may not disregard the tefra procedural provisions applicable to partnership items; i.e., subchapter C (“Tax Treatment of Partnership Items”), chapter 63, subtitle F of the Code (TEFRA procedural provisions). See sec. 6233. We are thus faced with three questions: (1) How to view the series of events between the trusts and Tigers Eye (if not as events between partners and a partnership); (2) what are the Federal income tax consequences of those events (if not governed by subchapter K); and (3) which of those consequences are properly before us in this proceeding subject to the TEFRA procedural provisions. Judge Beghe’s answer to the first question is clear and, I believe, correct: Because Tigers Eye is a sham and had no real business purpose [except, perhaps, as an agent], it merely acted as nominee and agent for the option partners and the items related to the transactions involving the option spreads and purchases and distribution of stock and foreign currency are characterized as such [i.e., as items of the option partners (its principal) rather than items of itself (an agent)]. * * * [See op. Ct. pp. 102-103.] On that basis, Tigers Eye, as agent for the trusts, (1) received the offsetting currency options and cash from the trusts, (2) sold the options (at a loss), and (3) used the bulk of the remaining cash to purchase for the trusts the currency and the shares. For Federal income tax purposes (answering the second question), the trusts (1) realized neither a gain nor a loss on the transfer of the options to Tigers Eye, (2) realized (but may not be allowed) a net loss on Tigers Eye’s disposition of the options, and (3) obtained section 1012 cost bases in the currency and the shares upon Tigers Eye’s purchase of them for the trusts.[1] Respondent has disallowed the loss. Respondent believes that, if subchapter K plays no role, the trusts overstated their bases in the currency and shares, with the result that they overstated their losses on the sales of that property. That, respondent believes, caused Mr. Logan to underpay his taxes, attracting a section 6662 penalty on account of a gross valuation misstatement. Respondent also determined other penalties and made other adjustments consistent with the recast principals-agent relationship. All of which brings us to the third question; i.e., which of these consequences are properly before us in this proceeding subject to the TEFRA procedural provisions. III. TEFRA Procedural Provisions Judge Beghe accurately summarizes section 6233: “Section 6233 provides that if a partnership return is filed for a taxable year but it is determined that no partnership exists, the TEFRA procedures still apply to the entity, its items, and persons holding an interest in the entity, to the extent provided in the regulations.” See op. Ct. p. 97. He also accurately summarizes the applicable regulations: In such a case, the TEFRA temporary regulations applicable to Tigers Eye’s 1999 taxable year provide that the Court may make determinations with respect to all items of the entity (entity items) that “would be partnership items as defined in section 6231(a)(3) and the regulations thereunder * * * if * * * [it] had been a partnership”. * * * [.Id.] Thus, for instance, if we determine that an entity filing a partnership return is not a partnership but is an association taxable as a corporation, we may determine the amounts taxable to the entity. See sec. 301.6233-lT(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6779 (Mar. 5, 1987); see also sec. 301.6233-l(a), Proced. & Admin. Regs. Moreover, the regulations tell us that among our determinations can be the determination that a purported partnership entity (let’s call it Tigers Eye Investment Partnership) does not exist. See sec. 301.6233-lT(c), Temporary Proced. & Admin. Regs., supra; see also sec. 301.6233-l(b), Proced. & Admin. Regs. If we find (as the parties agree and the stipulated decision provides) that Tigers Eye Investment Partnership does not exist for Federal income tax purposes, then nothing would have been contributed to it, nothing would have been distributed from it, nor would it, on its own behalf, have engaged in any transactions. That would explain (and justify) the first decision paragraph in the stipulated decision, setting to zero the following adjustments made by the FPAA: Loss, Other Deductions, Distributions of Property Other Than Money, and Capital Contributions. But Tigers Eye, as agent, did receive the offsetting options from the trusts, did sell them, and did purchase for the trusts the currency and the shares. Certainly, as their agent, it had a fiduciary obligation to account to the trusts for the expenditure of their money and to report to them the cost of the property obtained on their behalf. An agency (i.e., the fiduciary relationship between agent and principal), however, is not an entity (i.e., it has no legal identity apart from, the separate identities of its participants). See Black’s Law Dictionary 70 (“agency”), 612 (“entity”) (9th ed. 2009). Nevertheless, because Tigers Eye filed a partnership return for 1999, that return must be treated as if it were filed by an entity. See sec. 301.6233-lT(c), Temporary Proced. & Admin. Regs., supra; see also sec. 301.6233-l(b), Proced. & Admin. Regs. We could treat the agency as the hypothetical entity filing the return and apply the TEFRA procedural provisions to determine what would be the hypothetical entity items of that hypothetical entity as contemplated in section 301.6233-lT(c), Temporary Proced. & Admin. Regs., supra (now section 301.6233-l(a), Proced. & Admin. Regs.). Alternatively, Tigers Eye was properly organized as a Delaware L.L.C., and, therefore, it existed as an entity, acting as agent for the trusts. On that basis, we could ask what were the entity items of Tigers Eye, as agent. It would seem to make no difference whether we address the agency as a hypothetical entity, acting through Tigers Eye, or address Tigers Eye as an entity in its own right, acting as agent for the trusts. To simplify, we shall proceed as if Tigers Eye, in its own right, is the relevant entity. Section 301.6231(a)(3)-l(c)(3), Proced. & Admin. Regs., illustrates determinations that, with respect to distributions from a partnership, the partnership must make for purposes of its books and records or in order to furnish information to a partner, and which, on that account, constitute partnership items. Among the determinations included is: “The adjusted basis to the partnership of distributed property”. Sec. 301.6231(a)(3)-l(c)(3)(iii), Proced. & Admin. Regs. Tigers Eye, of course, had no basis in the currency and shares it purchased on behalf of the trusts, nor, in the sense contemplated by the regulations, did it make any distribution of that property to them. Nevertheless, because it purchased the property as agent of the trusts, it — rather than the trusts — had the information necessary to determine what property it had purchased for each trust and how much of each trust’s money it had expended on those purchases. Those were determinations that Tigers Eye had to make for purposes of its books and records in order to furnish information to the trusts. If we consider Tigers Eye the trusts’ agent obligated to make those determinations, Tigers Eye’s determination of the costs of the property it purchased for the trusts would be an entity item by analogy to section 301.6231(a)(3)-l(c)(3)(iii), Proced. & Admin. Regs, (adjusted basis to the partnership of distributed property is a partnership item). Because we have jurisdiction to determine entity items, see sec. 6226(f), we have jurisdiction to determine the costs of the currency and the shares, which, as discussed supra note 1, establishes the trusts’ bases in those properties. IV. Penalties I have little to add to Judge Beghe’s discussion of the penalties issues. Application of the penalties seems pretty straightforward. Most controversial appears to be application of the gross valuation misstatement penalty to any underpayment of tax attributable to the trusts’ overstatements of their bases in the currency and the shares. The trusts’ bases in the currency and the shares purchased by Tigers Eye for them are, pursuant to section 1012, the costs of that property, and those costs, in this case, are entity items. The trusts claimed huge losses on the sale of the currency and shares, which, it appears, respondent adjusted down (producing underpayments in tax) simply by substituting their cost bases in the property for their claimed outside bases. There would thus appear to be no partner-level determination required to apply the penalty. By way of analogy, in pertinent part, section 301.6231(a)(6)-l(a)(2), Proced. & Admin. Regs., provides: substituting redetermined partnership items for the partner’s previously reported partnership items * * * does not constitute a partner-level determination where the Internal Revenue Service otherwise accepts, for the sole purpose of determining the computational adjustment, all nonpartnership items * * * as reported. In 106 Ltd. v. Commissioner, 136 T.C. 67 (2011), a partnership-level proceeding postdating Petaluma FX Partners, LLC v. Commissioner, 591 F.3d 649, we agreed with the parties that a partner-level proceeding was unnecessary to determine a gross valuation misstatement penalty attendant to a partner’s sale of foreign currency distributed to him in a non-liquidating distribution. Apparently, the partner’s basis in the foreign currency sold was equal to the partnership’s basis in that currency, and the parties stipulated that the adjustment to inside basis (the partnership’s basis) allowed a numerical adjustment at the partner level. We held: Because it is possible to derive through such an adjustment alone the reduction in the claimed loss on the sale of the Canadian dollars that 106 distributed, and the consequent increase in the reportable gain and resulting deficiency — all without any need for an affected-item deficiency notice, * * * we conclude that we do have jurisdiction over the penalty in this partnership-level case. * * * [106 Ltd. v. Commissioner, 136 T.C. at 75.] That would appear to be the case here. The similarity between the two cases is that, as in 106 Ltd., the trusts’ bases in the currency and the shares they received is the hypothetical entity’s costs of that property (analogous to the partnership’s basis in the currency distributed in 106 Ltd.), and respondent may here determine the reduction in the losses reported by the trusts simply by substituting for the trusts’ claimed bases in the sold currency and shares their cost bases properly determined in this procedure. Beghe, Goeke, and Wherry, JJ., agree with this concurring opinion. Since the substantive rules of subch. K do not apply to a simple agency relationship, sec, 1012(a), which generally governs the determination of “basis of property”, applies to the trusts’ acquisition of the currency and shares, and the exception in that section for subch. K, “relating to partners and partnerships”, has no force or effect. Consequently, under sec. 1012(a), the trusts’ bases in the currency and shares purchased by Tigers Eye for them are their “cost of such property”.