EDWARD C. PRADO, Circuit Judge,
concurring:
Under this circuit’s precedent, the 40% penalty for a tax underpayment attributable to a substantial valuation misstatement does not apply when the relevant deduction has been totally disregarded because the underlying transaction lacked economic substance. See Todd v. Comm’r, 862 F.2d 540, 542-45 (5th Cir.1988); Heasley v. Comm’r, 902 F.2d 380, 383 (5th Cir.1990); see also I.R.C. § 6662. Because we are precedent-bound to follow the Todd/Heasley rule, I concur in the majority opinion, including Part IV.A. I write separately, however, to note that the Todd/Heasley rule may be misguided.
I.
In Todd, we relied on the 1981 “Blue Book”' — the name for a post-enactment summary of a major tax law prepared by the staff of the Joint Committee on Taxation — to interpret I.R.C. § 6659 (repealed 1989), the predecessor to § 6662, which penalized a tax underpayment “attributable to” a valuation overstatement. See Todd, 862 F.2d at 542-43 (interpreting Staff of the Joint Committee on Taxation, General Explanation of the Economic Recovery Tax Act of 1981, at 333 (Comm. Print 1981) (“Blue Book”)). The Blue Book stated that “‘[t]he portion of a tax underpayment that is attributable to a valuation overstatement will be determined after taking into account any other proper adjustments to tax liability,’ ” and offered a formula: the tax underpayment attributable to the valuation overstatement equals the difference between (i) “ ‘actual tax liability (i.e., the tax liability that results from a proper valuation and which takes into account any other proper adjustments)”’ and (ii) “‘actual tax liability'as *352 reduced by taking into account the valuation overstatement.’ ” Id. at 542-43 (quoting Blue Book at 333). The Blue Book also offered an example: If an improper $20,000 deduction “was claimed by the taxpayer as a result of a valuation overstatement,” and “another deduction of $20,000 is disallowed totally for reasons apart from the valuation overstatement,” then the overvaluation penalty should apply only to the former valuation-related deduction, not to the latter unrelated deduction. Id. at 543 (quoting Blue Book at 333 n.2). Thus, if the taxpayer’s filing reflected a taxable income of $40,000, but the actual taxable income after adjusting for each improper deduction was $80,000, and the taxable income reduced by counting the valuation overstatement was $60,000, then the tax underpayment attributable to the valuation overstatement is $80,000(r) minus $60,-000(r), where r is the tax rate. See id.
This example makes sense of the Blue Book’s statement that the portion of tax underpayment attributable to a valuation overstatement will be determined “after taking into account any other proper adjustments to tax liability.” According to the Blue Book, if a filing suffers from two unrelated sources of deficiency — e.g., one improper deduction stemming from a valuation overstatement of a particular asset, and another improper deduction stemming from a false charitable contribution — one should isolate the effect of the valuation-related deduction by (i) calculating the actual tax liability after correcting each improper deduction, (ii) calculating the tax liability reduced by counting the valuation-related deduction, and (iii) taking the difference. The Blue Book’s formula and example are expressing a straightforward principle in mathematical terms: Do not apply the valuation overstatement penalty to a tax infraction, such as an improper charitable deduction, that is unrelated to (i.e., incapable of being attributed to) the valuation overstatement.
Yet, the Todd court misread the Blue Book’s elementary guidance. In Todd, the defendant-investors overvalued their property and consequently claimed improper deductions and credits, which the Tax Court totally denied because the property had not been placed in service — a requirement for those deductions and credits. Id. at 540-41. We found support in the Blue Book to hold that the valuation overstatement penalty should not apply, because there was no difference between the investors’ actual tax liability (which excluded the overvaluation-generated tax benefit that was conditioned on placing the property in service) and their tax liability reduced by taking into account the overvaluation (which, we concluded, would still not have included the tax benefit, as the deduction was denied because the property had not been placed in service). Id. at 542-A3. As noted, however, the Blue Book only explains that the overvaluation penalty should not apply to an improper tax benefit that is unrelated to the valuation overstatement. The Blue Book only covers the case of two unrelated deductions, one of which is caused by overvaluation. Accordingly, the Blue Book does not suggest that the overvaluation penalty should not apply if overvaluation is one of two possible grounds for denying the same deduction and the ground explicitly chosen is not overvaluation. No language in the Blue Book counsels against applying the penalty in such a case; the tax underpayment could still be “attributable to” the overvaluation. But we inferred otherwise, despite the Blue Book’s silence, and begged the question.
What is more, we exacerbated Todd’s misinterpretation in Heasley, holding that “[wjhenever the IRS totally disallows a deduction or credit, the I.R.S. may not *353 penalize the taxpayer for a valuation overstatement included in that deduction or credit.” Heasley, 902 F.2d at 383. Our misreading of the Blue Book thereby calcified in the form of the Todd/Heasley rule. Now, under our precedent, the overvaluation penalty is inapplicable even if the possible grounds for denying the same deduction — overvaluation and a lack of economic substance, for example — emerge from the same factual nucleus.
To be sure, a routine application of the Todd/Heasley rule decides this case. If an overvaluation generates an improper deduction, and the deduction is totally disallowed on the ground that the underlying transaction is a sham, we are bound to hold that the tax underpayment is not “attributable to” the valuation overstatement. In so reasoning, however, we have strayed from the Blue Book’s text.[1] Penalizing Defendants for the valuation misstatement would not flout the Blue Book’s warning not to apply the valuation-misstatement penalty to a tax infraction that is unrelated to the overvaluation.[2]
II.
Arguably, if the Todd/Heasley rule did not bind us, tax underpayment in this case would be “attributable to” a valuation overstatement. Defendants made a valuation misstatement when they asserted that the basis in the Australian currency was $202.5 million. In reality, the basis in the Australian currency was about $5 million. To create this anomaly, Defendants engaged in two sham, offsetting transactions; they moved the “long” and “short” swaps into the partnership; they recognized the $202.5 million increase in basis from the “long” swap assets, but ignored the $197.5 million decrease in basis from the “short” swap liabilities; and they dissolved the partnership, leaving behind a fake basis of about $202.5 million in the Australian currency. Defendants then sold the Australian currency, which was actually worth about $5 million, in the marketplace for its fair market value — presumably close to $5 million. They should not have reported much loss, if any. As we know, however, Defendants made a valuation misstatement. They asserted that the Australian currency had a basis of $202.5 million. Thus, Defendants claimed a loss of about $200 million from the sale, because they had sold an item worth $202.5 million for much less. Consequently, when Defendants paid their taxes, they did not pay tax on about $200 million. But as we know, the loss was artificial. As a result of their *354 valuation misstatement, Defendants paid less tax than they should have.
After analyzing the anatomy of Defendants’ scheme, it becomes clear that the basis misstatement and the transaction’s lack of economic substance are inextricably intertwined. The basis misstatement was the engine of, the vehicle behind the sham transaction. By misstating the basis in Australian currency, Defendants claimed an artificial loss when they sold the currency; by claiming the artificial loss, Defendants underpaid their tax. Misstating the basis thereby generated an improper tax benefit in direct proportion to the amount of the misstatement. Although that deduction was disregarded because the transaction lacked economic substance, attributing the tax underpayment only to the artificiality of the transaction and not to the basis overvaluation is making a false distinction. The basis misstatement is an essential element of the transaction’s artificiality; in fact, disregarding the deduction for a lack of economic substance pulls the correct basis to zero, which eliminates the claimed loss, and renders the tax underpaid. Therefore, disregarding the transaction for a lack of economic substance does not alter the reality that the tax underpayment was ultimately “attributable to” the basis misstatement — or so one could argue, in a world without Todd/Heasley.
III.
The near-unanimous opposition to the Todd/Heasley rule is worth highlighting. Except for the Ninth Circuit, every sister circuit that has considered the issue has concluded that the valuation misstatement penalty may apply even if the deduction is totally disallowed because the underlying transaction lacked economic substance. See Fidelity Int'l Currency Advisor A Fund, LLC v. United States, 661 F.3d 667, 673-74 (1st Cir.2011) (rejecting Todd/Heasley rule for “misreading” the Blue Book and following “without hesitation the dominant view of the circuits”); Merino v. Comm’r, 196 F.3d 147, 158 (3d Cir.1999) (declining to apply Todd/Heasley and affirming valuation overstatement penalty because overvaluation was “an essential component of the tax avoidance scheme”); Zfass v. Comm’r, 118 F.3d 184, 191 (4th Cir.1997) (rejecting Todd/Heasley and affirming valuation overstatement penalty because value overstatement was “primary reason” for disallowance due to lack of economic substance); Illes v. Comm’r, 982 F.2d 163, 167 (6th Cir.1992) (“The tax benefit ... was directly dependent upon the valuation overstatement, and the amount of the tax benefit was actually determined by the amount of the overvaluation. The entire artifice of the [tax] shelter was constructed on the foundation of the overvaluation of its assets. Plainly, then, [the tax] underpayment was attributable to [the] valuation overstatement.”); Gilman v. Comm’r, 933 F.2d 143, 151 (2d Cir.1991) (“The lack of economic substance was due in part to the overvaluation, and thus the underpayment was attributable to the valuation overstatement.”); Massengill v. Comm’r, 876 F.2d 616, 619-20 (8th Cir.1989) (“When an underpayment stems from disallowed depreciation deductions or investment credit due to lack of economic substance, the deficiency is attributable to overstatement of value, and subject to penalty [for valuation overstatement].”).
In addition, the Federal Court of Claims and the Tax Court, when not bound by corresponding circuit precedent, have sided with the majority. See Clearmeadow Invs., LLC v. United States, 87 Fed.Cl.509, 535-36 (Fed.Cl.2009) (siding with majority and criticizing Todd/Heasley rule); Petaluma FX Partners, LLC v. Comm’r, *355 131 T.C. 84, 104-05, 2008 WL 4682543 (2008) (siding with majority and applying valuation misstatement penalty despite lack of economic substance, where D.C. Circuit had not yet spoken on the issue), rev’d on other grounds, 591 F.3d 649 (D.C.Cir.2010).
Although the Ninth Circuit has not joined the majority because it is bound by its own precedent to follow the Todd/Heasley rule, it has questioned the rule’s wisdom. Keller v. Comm’r, 556 F.3d 1056, 1060-61 (9th Cir.2009) (holding that the Ninth Circuit is “constrained by” Gainer v. Comm’r, 893 F.2d 225 (1990), which “rested in large part” on Todd, but recognizing the “sensible” approach of “many other circuits”). Only we remain completely out of step.
IV.
As a policy matter, the Todd/Heasley rule could incentivize improper tax behavior. If a taxpayer claims a benefit that is improper only due to a basis misstatement, then the valuation-misstatement penalty may apply. But by crafting a more extreme scheme and generating a deduction that is improper not only due to a basis misstatement, but also for some other reason (e.g., a lack of economic substance), the taxpayer increases his chance of avoiding the valuation-misstatement penalty — because, per the Todd/Heasley hierarchy whereby the overvaluation penalty is subordinated to any other proper adjustment, disallowing the deduction on the other ground could block the penalty. Amplifying the egregiousness of the scheme — to the point where the transaction is an utter sham — could thus, perversely, shield the taxpayer from liability for overvaluation. See Fidelity, 661 F.3d at 673 (recognizing this perverse policy result); Gilman, 933 F.2d at 150 (same); see also Keller, 556 F.3d at 1061 (same, though following circuit precedent not to apply penalty). A taxpayer could generate an enormous improper tax benefit by overstating an asset’s basis, but then could escape the overvaluation penalty by strategically conceding a deficiency on the ground of economic substance. See Clearmeadow, 87 Fed.Cl. at 536 (recognizing the risk of such “gamesmanship”). By creating this perverse incentive structure, the Todd/Heasley rule frustrates the purpose of the valuation-misstatement penalty, which is to deter taxpayers from inflating values and bases to generate large, improper tax benefits — such as a deduction to the tune of $200 million.
V.
Still, I understand that our hands are tied. Additionally, I am not convinced that Treasury Regulation § 1.662-5(g) frees us from the grip of Todd/Heasley. I therefore concur.
Judges REAVLEY and W. EUGENE DAVIS concur in Judge PRADO’S special concurrence.

. We have not only strayed from the Blue Book, but we have also strayed from Todd. In Todd, the possible grounds for denying the same deduction were independent: the overvaluation was unrelated to the failure to place the property in service. In our case, however, the possible grounds for denying the deduction overlap: the overvaluation and the transaction's lack of economic substance are factually interrelated.

. I am not suggesting that the Blue Book is high-quality legislative history. It is not available to members of Congress when they vote on the corresponding tax bill, and it is not approved by committee members. Still, although the Blue Book does not reflect congressional intent as reliably as a concurrent committee report does, according interpretive weight to the Blue Book could be appropriate, depending on the case. See Michael Livingston, What's Blue and White and Not Quite as Good as a Committee Report: General Explanations and the Role of ‘Subsequent' Tax Legislative History, 11 Am. J. Tax Pol’y 91 (1994) (arguing that the Blue Book’s interpretive weight should depend on the case and the role it is performing in the court’s reasoning). Nonetheless, the problem here is that we found authority for the Todd/Heasley rule in the 1981 Blue Book, even though the Blue Book was, at best, silent on whether the overvaluation penalty should have applied in either Todd or Heasley.