# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 18, 2014          Decided June 26, 2015

No. 12-1148

LOGAN TRUST,
APPELLANT

TIGERS EYE TRADING, LLC, ET AL.,
APPELLEES

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLEE

———

On Appeal from the Order and Decision
of the United States Tax Court

———

*David D. Aughtry* argued the cause for appellant. With him on the briefs was *William E. Buchanan*.

*Andrew M. Weiner*, Attorney, U.S. Department of Justice, argued the cause for federal appellee. With him on the brief were *Tamara W. Ashford*, Acting Deputy Assistant Attorney General, and *Gilbert S. Rothenberg* and *Joan I. Oppenheimer*, Attorneys. *Ellen P. DelSole*, Attorney, entered an appearance.

*James P. Wehner* was on the brief for appellees Tigers Eyes Trading, LLC, et al.

Before: HENDERSON, GRIFFITH, and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: H.L. Mencken famously observed, "[T]here is always an easy solution to every human problem—neat, plausible, and *wrong*." H.L. MENCKEN, A MENCKEN CHRESTOMATHY 443 (First Vintage Books 1982) (1949) (emphasis added). When first taken, this appeal presented a complex problem that has vexed the courts and for which there was no easy answer: whether and when the Tax Court may apply a penalty to a taxpayer who underpays his taxes by participating in a partnership that was nothing more than an intricate tax shelter. But an intervening decision of the Supreme Court has recently revealed a disposition for this case that is neat, plausible, and *right*. By the time of oral argument, even the parties agreed, leaving us little to do but briefly explain why they are correct.

I

Although partnerships do not themselves pay taxes, the partnership must still submit a yearly information return to the Internal Revenue Service (IRS) that reports partnership items such as the business's income and losses. When the IRS suspects something is amiss on a partnership's return, the agency conducts an audit of the return. If the IRS finds that the partnership lacks economic substance and is in reality a tax shelter, it will adjust the partnership's return accordingly and notify the partners of the changes. I.R.C. §§ 6221, 6223(a)(2), 6231(a)(3). The partners may challenge such adjustments in court. *Id*. § 6226(a).

After any such challenges are resolved, the IRS will adjust each partner's tax return to reflect any increase or decrease in his tax liability based on changes made to the partnership's return. *Id*. § 6231(a)(6). Once those individual adjustments are made, each partner must pay any increase in his tax liability and any applicable penalties. If the adjustments to the partner's return can be made mechanically without taking into account his unique circumstances, the IRS will assess his new tax liability and impose any penalties directly against the partner. The partner can only raise any defenses in a refund action after he has paid the taxes and penalties. *Id*. § 6230(a)(1), (c)(4). On the other hand, if the partner's liability turns on facts unique to him, the IRS must use the deficiency process, which benefits the partner by allowing him to challenge the IRS's conclusions before paying. *Id*. § 6230(a)(2)(A)(i).

Until 1997, the IRS was limited to using deficiency proceedings to recover penalties against a partner. But that year, Congress created an exception to this process that is at the heart of this case. Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1238, 111 Stat. 1026-27. Now, if a penalty "relates to an adjustment to a partnership item" and thus applies to all partners whose individual returns contain the same errors identified and corrected in the partnership's return, the reviewing court can determine the "applicability" of the penalty when reviewing the challenge to the IRS adjustments to the partnership's return. I.R.C. § 6226(f). If the court determines that the penalty does apply, the IRS may assess the penalty against the partners directly once all partnership matters have been resolved and require the partners to raise any objections only after they have paid in a refund action. *Id*. § 6230(a)(2), (c)(4).

This appeal involves a Son of BOSS tax shelter, the direct descendant of an equally abusive tax shelter known as a BOSS (bond option sales strategy). As we and numerous other courts have found, the Son of BOSS abuses the partnership form of doing business by "employ[ing] a series of transactions to create artificial financial losses that are used to offset real financial gains, thereby reducing tax liability." *Petaluma FX Partners, LLC v. C.I.R.*, 591 F.3d 649, 650 (D.C. Cir. 2010). This tax shelter allows a partner to artificially inflate the value of his capital contributions to the partnership (referred to as his outside basis) and then use that basis to generate a "loss" on his personal tax return.

II

Taxpayer A. Scott Logan inflated his basis in a partnership that functioned as a Son of BOSS tax shelter, Tigers Eye Trading, LLC, and as a result could claim a substantial loss on his 1999 tax return. This paper loss of close to $27 million offset the taxes Logan otherwise would have owed on around $27 million he had made in capital gains. Logan joined Tigers Eye through three trusts he had formed. The trusts were the true partners in Tigers Eye, Logan claimed losses based on the three trusts' outside basis, and he participated in this proceeding through one of the trusts. For simplicity's sake, however, we refer to Logan himself and not his trust as the appellant and the partner involved in this case.

The IRS audited Tigers Eye and concluded that, like other Son of BOSS tax shelters, it was a sham entity that lacked economic substance and was created solely so that its participants could avoid taxes. The IRS issued a notice that disregarded the partnership's existence and any contributions made to the sham enterprise, adjusted the outside basis of

each of its partners, including Logan, to zero, and determined that any partner who underpaid his taxes as a result of reporting his outside basis in Tigers Eye faced a gross valuation-misstatement penalty. The gross valuation-misstatement penalty is a 40 percent penalty that applies to any portion of taxes that a partner underpaid because he overstated the value of his basis in property by 400 percent or more of its true value. I.R.C. § 6662(h)(2) (2000).[*] When, as in a sham partnership, an asset's true value is zero, the gross valuation-misstatement penalty is automatically triggered if a partner claimed on his tax return that the asset was worth anything at all. Treas. Reg. § 1.6662-5(g). Along with the partnership, Logan challenged the notice in the Tax Court. After Logan's motions for summary judgment were denied, the partnership settled with the IRS and entered into a stipulated decision that accepted the IRS's findings and bound all parties.

Shortly after the stipulated decision was entered, we held in *Petaluma* that the Tax Court lacked jurisdiction to do what it had just done in Logan's case: determine a partner's outside basis in a proceeding that was adjudicating the tax treatment of the partnership. 591 F.3d at 654-55. We remanded the case to the Tax Court to decide if it could nonetheless determine the applicability of penalties to be imposed on individual partners without adjusting any partner's outside basis. *Id.* at 655-56. Logan moved to revise the stipulated decision, arguing that under *Petaluma* the Tax Court not only lacked jurisdiction to adjust his outside basis to zero, but also to

---

[*] Congress has since amended and lowered the threshold for the gross valuation-misstatement penalty. It is now triggered when a taxpayer claims that his basis in an asset was 200 percent or more of its true (adjusted) value. I.R.C. § 6662(h)(2) (2012).

apply the penalty to him. The Tax Court disagreed with Logan's reading of *Petaluma* and left the stipulated decision intact. Logan appealed to this court.

While Logan's appeal was pending, the Supreme Court resolved the jurisdictional questions related to outside basis and penalties once and for all. *United States v. Woods*, 134 S. Ct. 557 (2013). As the parties agree, *Woods* makes clear that a court adjudicating partnership matters has jurisdiction to apply "any penalty that could result from an adjustment to a partnership item." *Id.* at 564. That authority encompasses situations like this one where the partnership is a mere tax shelter, which is a determination that we held in *Petaluma* and the Court affirmed in *Woods* should be made in the course of adjudicating partnership issues. In such a case, the partnership never existed, and no partner could have any outside basis in the entity. It follows, therefore, that *any* partner who claimed his outside basis as a loss on his tax return faces a potential gross valuation-misstatement penalty for doing so. That penalty "relates to" and flows directly from an "adjustment to a partnership item," I.R.C. § 6226(f), that is, from the "determination that [the] partnership lacks economic substance," *Woods*, 134 S. Ct. at 563. Thus, in the course of adjudicating matters related to the partnership, the court can announce that any member of the tax-shelter partnership who the IRS later finds shirked his taxes by claiming a basis greater than zero is subject to a gross valuation-misstatement penalty, *Woods*, 134 S. Ct. at 565—a penalty that the IRS can impose directly on the partner, requiring him to pay it before bringing a refund action.

*Woods* also made clear that outside basis is not a partnership item that a court has jurisdiction to adjust when reviewing matters involving only the partnership. *Id.* at 565.

That adjustment must be formally conducted in proceedings with each partner, although the reviewing court can "determine whether the adjustments it [does] make, including the economic-substance determination, ha[ve] the potential to trigger a penalty; and in doing so, it [is] not required to shut its eyes to the legal impossibility of any partner's possessing an outside basis greater than zero in a partnership that, for tax purposes, d[oes] not exist." *Id*. Thus, although a court may announce that a penalty has been triggered in a proceeding involving the partnership based on the presumption that outside basis in a sham partnership is zero, the court cannot formally adjust a partner's outside basis at that time.

Once *Woods* was decided, we ordered new briefing and held oral argument. We have jurisdiction pursuant to I.R.C. § 7482(a)(1). We review jurisdictional and statutory interpretation questions de novo. *Munsell v. Dept. of Agric.*, 509 F.3d 572, 578 (D.C. Cir. 2007); *United States v. Wilson*, 290 F.3d 347, 352 (D.C. Cir. 2002).

Because the parties to this case agree about how the issues they once disputed should now be resolved, our analysis is brief. The parties recognize that *Woods* answered the questions about the Tax Court's jurisdiction over penalties and outside basis. Logan concedes rightly that the Tax Court properly applied his penalty when the court conducted its review of the partnership and its items, and we will affirm the Tax Court on this point. In turn, the IRS acknowledges correctly that the Tax Court lacked jurisdiction to determine that the Tigers Eye partners had no basis in the partnership, and we will reverse the portion of the Tax Court's decision that did so.

That leaves only two additional issues raised by Logan that we will not consider because "at oral argument, the dispute between the parties . . . disappeared before our eyes." *Washington Legal Found. v. Henney*, 202 F.3d 331, 335 (D.C. Cir. 2000). Logan argued that certain language in the Tax Court's summary judgment ruling, and in the notice that the Tax Court approved in its stipulated decision, is legally erroneous and could preclude him from raising his reliance on his law firm's advice as a defense to penalties in a future refund action. In its brief and at oral argument, however, counsel for the IRS explained that the Tax Court issued no binding ruling regarding Logan's defense based on his firm's advice, leaving all issues regarding its availability and application to be litigated in a future refund action. *See* Oral Arg. Tr. 26:13-28:8. In the IRS's view, then, nothing can prevent Logan from asserting this defense, and Logan's counsel explained that the IRS's concession at oral argument sufficiently protects his client. *Id*. 32:6-17.

### III

The Tax Court's order and decision entered on February 13 and 15, 2012, is affirmed with regard to the court's holding that the gross valuation-misstatement penalty applies to the Tigers Eye partners. It is reversed with regard to the court's holding that the Tigers Eye partners had no outside basis in the partnership. We remand this case to the Tax Court for further proceedings consistent with this opinion.