# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 18, 2014                    Decided June 26, 2015

No. 12-1364

PETALUMA FX PARTNERS, LLC, RONALD SCOTT
VANDERBEEK, A PARTNER OTHER THAN THE TAX MATTERS
PARTNER,
APPELLEE

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLANT

———

On Appeal from the Order and
Decision of the United States Tax Court

———

*Joan I. Oppenheimer*, Attorney, U.S. Department of Justice, argued the cause for appellant. With her on the briefs were *Tamara W. Ashford*, Principal Deputy Assistant Attorney General, and *Gilbert S. Rothenberg*, Attorney. *Andrew Weiner*, Attorney, entered an appearance.

*Edward M. Robbins Jr.* argued the cause and filed the brief for appellee.

Before: HENDERSON, GRIFFITH and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

2

SRINIVASAN, *Circuit Judge*: This case comes before this court for a third time. It arises out of the Tax Court's determination that Petaluma FX Partners, LLC, was a sham entity and so would be disregarded for tax purposes, resulting in the potential imposition of penalties against individual partners for underreporting their taxable income. The issue we now consider concerns whether the Tax Court had jurisdiction at the current, partnership-level stage to determine the applicability of the penalties to the individual partners, or whether that determination instead must await the commencement of separate, partner-level proceedings against each partner.

In *United States v. Woods*, 134 S. Ct. 557 (2013), the Supreme Court resolved that question in favor of the existence of jurisdiction at this stage of the proceedings. Petaluma nonetheless contests the Tax Court's jurisdiction. Petaluma challenges a temporary Treasury Department regulation that, in Petaluma's view, is necessary to confer the jurisdiction recognized in *Woods*. We have no occasion to resolve Petaluma's challenge to the temporary regulation, however. Assuming that a regulation in fact is necessary to create jurisdiction in the Tax Court, we conclude that a different (and permanent) regulation is the operative one for purposes of conferring jurisdiction. The latter regulation is unchallenged here, and we see no basis for questioning its applicability in this case. We therefore conclude that the Tax Court had jurisdiction to decide the applicability of penalties to Petaluma's partners.

3

I.

A.

The Tax Court's initial opinion in this case contains a detailed description of the facts giving rise to the dispute, *Petaluma FX Partners, LLC v. Comm'r* (*Petaluma I*), 131 T.C. 84, 86-89 (2008), and our previous opinion summarizes the factual history, *Petaluma FX Partners, LLC v. Comm'r* (*Petaluma II*), 591 F.3d 649, 650-52 (D.C. Cir. 2010). By way of a brief review, this case involves the so-called "Son of BOSS" tax shelter, in which two or more individuals set up a partnership solely for tax purposes. The Son of BOSS shelter generally makes use of a series of offsetting financial transactions aimed to generate artificial financial losses, with those losses in turn artificially reducing taxable income. In 2000, the IRS formally identified Son of BOSS tax shelters as abusive transactions. I.R.S. Notice 2000-44, 2000-2 C.B. 255.

In August 2000, the taxpayers in this case, Ronald Thomas Vanderbeek and Ronald Scott Vanderbeek, created a Son of BOSS shelter. They formed Petaluma FX Partners, LLC as a partnership, ostensibly for the purpose of trading foreign currency options. In October 2000, the Vanderbeeks each contributed pairs of offsetting long and short foreign currency options to Petaluma. When a partner contributes assets to a partnership, the partner must establish her outside basis in that partnership, which functions as a proxy for the value of the assets she contributed. *See* 26 U.S.C. § 722. Each of the Vanderbeeks, upon contributing his paired options to Petaluma, increased his outside basis to account for the value of his contributed long option. But neither of the Vanderbeeks reduced his outside basis to account for the

offsetting assumption of liability associated with the short options, resulting in an artificial inflation of his basis.

In December 2000, the Vanderbeeks terminated their partnership interests in Petaluma. The upshot of their tax avoidance scheme was to inflate their basis in the partnership's assets, enabling them to claim, on their 2000 federal income tax returns, substantial short-term capital losses of nearly $18 million in the case of Ronald Thomas Vanderbeek and nearly $8 million in the case of Ronald Scott Vanderbeek. The Vanderbeeks in turn used those inflated losses to offset their capital gains for the 2000 tax year, thus artificially reducing their taxable income.

B.

Partnerships do not pay federal income taxes. 26 U.S.C. § 701. A partnership's taxable income and losses instead pass through to the partners, who report their shares of partnership income or losses on their individual federal income tax returns. *Id.* When the IRS wishes to reject a transaction like the Son of BOSS tax shelter at issue in this case, it will disregard the partnership for tax purposes and thus disallow the individual partners to report the manufactured losses on their tax returns. *See Woods*, 134 S. Ct. at 561-62. Of particular significance here, the IRS possesses statutory authority to impose additional penalties on taxpayers who underreport their taxable income by significant amounts. *See* 26 U.S.C. § 6662.

Although partnerships do not themselves pay income taxes, partnerships must submit information returns, which the IRS reviews and can subject to audit. *See* 26 U.S.C. § 6031. At one time, the IRS lacked any means by which to correct errors on a partnership's information return in a single,

unified proceeding. Instead, if there were a mistake on a partnership's information return, the IRS would need to bring a separate deficiency proceeding against each individual partner, giving rise to duplicative proceedings and the possibility of inconsistent treatment of partners in the same partnership.

Congress addressed that problem in the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), 26 U.S.C. §§ 6221, *et seq*. TEFRA establishes a two-stage process for review of partnership tax issues, consisting of (i) a partnership-level proceeding concerning the partnership as a whole, followed by (ii) a partner-level proceeding for each individual partner. With regard to the former, if the IRS disagrees with a partnership's information return, it can bring a partnership-level proceeding in which it may adjust "partnership items," *id*. § 6221, defined as items "more appropriately determined at the partnership level," *id*. § 6231(a)(3). A partnership-level proceeding culminates in the IRS's issuance of a Notice of Final Partnership Administrative Adjustment (FPAA), which is subject to judicial review in the Tax Court, the Court of Federal Claims, or federal district court. *Id*. § 6226(a). A reviewing court has jurisdiction to determine "all partnership items"; the allocation of those items among the partners; and "the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item." *Id*. § 6226(f). Once the IRS's adjustments to the partnership items become final, the IRS may undertake further proceedings at the partner level to make associated adjustments to the tax liability of individual partners. *See id*. §§ 6230(a)(1)-(2), (c), 6231(a)(6).

6

C.

In July 2005, the IRS issued an FPAA to Petaluma and its partners for tax year 2000. The FPAA concluded that Petaluma lacked economic substance and was thus a sham that would be disregarded for tax purposes. The FPAA relatedly reduced to zero the Vanderbeeks' outside basis in their respective partnership interests. Finally, the FPAA determined that the accuracy-related penalties set forth in 26 U.S.C. § 6662 applied to the partners' underpayments of tax.

Petaluma, joined by Ronald Scott Vanderbeek, timely filed a petition for readjustment of the FPAA in the Tax Court. During the initial Tax Court proceedings, Petaluma stipulated to the correctness of most of the adjustments made by the FPAA but challenged the Tax Court's jurisdiction. The Tax Court granted the IRS's motion for summary judgment, concluding that it had jurisdiction to determine: (i) that Petaluma was a sham; (ii) that the Vanderbeeks had no outside basis in Petaluma because "there can be no adjusted basis in a disregarded partnership"; and (iii) that accuracy-related penalties would be applicable to Petaluma's partners. *Petaluma I*, 131 T.C. at 97, 99-100, 102.

Petaluma appealed to this court. *Petaluma II*, 591 F.3d at 649. We upheld the Tax Court's jurisdiction to deem Petaluma a sham entity for tax purposes. *Id*. at 654. But we held that the Tax Court lacked jurisdiction in a partnership-level proceeding to determine the outside basis of individual partners, concluding that the determination of outside basis must await a subsequent partner-level proceeding. *Id*. at 654-55. We therefore vacated the Tax Court's decision that it had jurisdiction over the applicability of penalties, and we remanded for the Tax Court to decide whether it could

determine the applicability of penalties without taking into account the outside basis of individual partners. *Id*. at 655-56.

On remand, the Tax Court held that it lacked jurisdiction in this partnership-level proceeding to determine the applicability to the Vanderbeeks of accuracy-related penalties. *Petaluma FX Partners, LLC v. Comm'r* (*Petaluma III*), 135 T.C. 581, 586-87 (2010). The IRS again appealed to this court. During the pendency of that appeal, the Tax Court in an unrelated case held, in seeming conflict both with our decision in *Petaluma II* and with its own decision in *Petaluma III*, that it had jurisdiction in partnership-level proceedings to determine both the outside basis of individual partners and the applicability of penalties. *Tigers Eye Trading, LLC v. Comm'r* (*Tigers Eye II*), 138 T.C. 67, 143 (2012). Because of the apparent conflict between *Petaluma III* and *Tigers Eye II*, we remanded the case without reaching the merits, directing the Tax Court to address the extent to which its decision in *Tigers Eye II* altered its decision in *Petaluma III*. *Petaluma FX Partners, LLC v. Comm'r* (*Petaluma IV*), No. 11-1084, 2012 WL 2335993, at *1 (D.C. Cir. Feb. 27, 2012) (per curiam). On remand, the Tax Court adhered to the result in *Petaluma III* despite the apparently contradictory conclusions reached in *Tigers Eye II*. *Petaluma FX Partners, LLC v. Comm'r* (*Petaluma V*), 103 T.C.M. (CCH) 1769 (2012).

The IRS once again appealed, arguing that the Tax Court erred in finding it lacked jurisdiction to determine the applicability of accuracy-related penalties in Petaluma's partnership-level proceeding. The taxpayer in *Tigers Eye II* concurrently appealed. We held both cases in abeyance pending the Supreme Court's decision in *Woods*. *Woods* involved a similar tax shelter in which a partnership's partners each likewise claimed large losses based on an artificially inflated outside basis. The Court in *Woods* ordered briefing

on the jurisdictional question raised by the IRS in this appeal: whether courts have jurisdiction in partnership-level proceedings to determine the applicability of accuracy-related penalties authorized by § 6662. 134 S. Ct. at 562.

As a threshold matter, the *Woods* Court endorsed our holdings in *Petaluma II* that (i) courts have jurisdiction in partnership-level proceedings to determine that a partnership is a sham and will be disregarded for tax purposes, and (ii) courts lack jurisdiction in partnership-level proceedings to determine an individual partner's outside basis. *Woods*, 134 S. Ct. at 563-65. With respect to the latter determination, the Court held, in agreement with our decision in *Petaluma II*, that because outside basis is a nonpartnership item, a court in a partnership-level proceeding lacks jurisdiction to "make a formal adjustment of any partner's outside basis." *Id.* at 565 (citing *Petaluma II*, 591 F.3d at 655). The Court went on to hold, however, that courts in partnership-level proceedings have jurisdiction to determine the applicability of accuracy-related penalties to a partner, "even if imposing the penalty would also require determining . . . items such as outside basis." *Id.* at 564.

## II.

Of the three jurisdictional questions raised by this case, two—jurisdiction to make a sham determination and jurisdiction to determine the outside basis of individual partners—were resolved by the *Petaluma II* panel, *see Petaluma II*, 591 F.3d at 654-55, in a manner subsequently endorsed by the *Woods* Court, *Woods*, 134 S. Ct. at 563-65. The remaining jurisdictional issue concerns whether jurisdiction exists in partnership-level proceedings to determine the applicability of penalties to the partners of a sham partnership, including penalties that relate to

nonpartnership items such as outside basis. *See Petaluma II*, 591 F.3d at 655-56.

In *Woods*, the Supreme Court resolved that question in favor of jurisdiction. 134 S. Ct. at 564. The Court observed that the applicability-of-penalties determination is "inherently provisional," in that "imposing a penalty always requires some determinations"—such as a partner's outside basis— "that can be made only at the partner level." *Id*. But courts retain jurisdiction in partnership-level proceedings to determine whether any partnership-level adjustments—such as the determination in this case that Petaluma was a sham— carry "the potential to trigger a penalty" against the partners. *Id*. at 565. Under *Woods*, accordingly, the Tax Court in this case had jurisdiction to determine the applicability of accuracy-related penalties to the Vanderbeeks.

Notwithstanding *Woods*, Petaluma contends that the Tax Court lacked jurisdiction in this partnership-level proceeding to make any determinations concerning Petaluma or its partners, including the determination that the partners are subject to accuracy-related penalties. Petaluma's argument centers on the validity of a temporary regulation, § 301.6233-1T (the Temporary Regulation), issued in 1987 by the Treasury Department. Temp. Treas. Reg. § 301.6233-1T. An understanding of the Temporary Regulation's potential implications for the Tax Court's jurisdiction in this case requires a brief march through the statutory and regulatory provisions governing federal jurisdiction over sham partnerships.

That march begins with § 6226(f) of the Internal Revenue Code, enacted as part of TEFRA. Section 6226(f) establishes that, in a partnership-level proceeding, a court (including the Tax Court) reviewing an FPAA has jurisdiction to determine

not only "all partnership items," but also "the applicability of any penalty . . . which relates to an adjustment to a partnership item." 26 U.S.C. § 6226(f). In 1984, two years after TEFRA's enactment, Congress enacted § 6233(b). That provision states that, "to the extent provided in regulations," the provisions of TEFRA are "extended" to entities that file a partnership return but as to which "it is [later] determined that there is no entity" for that taxable year (because, for instance, the entity is found to be a sham). *Id*. § 6233(a)-(b).

Treasury, acting pursuant to its authority under § 6233(b) to "provide[] in regulations" for the extension of TEFRA's provisions to sham partnerships, *id.* § 6233(b), promulgated the aforementioned Temporary Regulation. The Temporary Regulation prescribes that "any [FPAA] or judicial determination resulting from a [TEFRA] proceeding . . . may include a determination" that "there is no entity for such taxable year," as well as "determinations with respect to all items of the entity which would be partnership items . . . if such entity had been a partnership in such taxable year." Temp. Treas. Reg. § 301.6233-1T(a), (c)(1). Under the Temporary Regulation, in other words, TEFRA's provisions apply not only to bona fide partnerships but also to partnerships determined to be shams.

TEFRA's provisions include § 6226(f), which, as noted, vests courts in partnership-level proceedings with jurisdiction over partnership items and over the applicability of penalties related to adjustments to partnership items. In Petaluma's view, that provision's grant of jurisdiction—like all of TEFRA's provisions—could extend to sham partnerships only if a regulation promulgated under § 6233(b) so provides. Here, Petaluma assumes, that extension ostensibly came about by virtue of the Temporary Regulation. And if the Temporary Regulation is invalid, Petaluma argues, the Tax Court

necessarily had no valid basis upon which to assert jurisdiction in this partnership-level proceeding.

Petaluma challenges the validity of the Temporary Regulation on the ground that its promulgation failed to comply with both the Administrative Procedure Act's notice-and-comment requirements and the APA's mandate that agencies publish a substantive rule at least thirty days before its effective date. *See* 5 U.S.C. § 553(c), (d). Although Petaluma failed to raise that (or any) challenge to the Temporary Regulation at any previous point in these prolonged proceedings, the IRS raises no argument that Petaluma forfeited its challenge. Because a forfeiture argument can itself be forfeited, *see Deppenbrook v. Pension Benefit Guaranty Corp.*, 778 F.3d 166, 172 (D.C. Cir. 2015), and because the IRS has done so here, forfeiture principles pose no bar to reaching the merits of Petaluma's challenge to the Temporary Regulation.

While the IRS does not argue forfeiture, it contends that we should refrain from reaching the merits of Petaluma's argument for a different reason. In the IRS's view, law-of-the-case principles should bar us from addressing the validity of the Temporary Regulation because *Petaluma II* already resolved that question. The "law-of-the-case doctrine holds that decisions rendered on the first appeal should not be revisited on later trips to the appellate court." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc). Here, however, *Petaluma II* did not render a "decision" on the validity of the Temporary Regulation, so we would not "revisit" any such decision by addressing the merits of that issue. Although the *Petaluma II* panel noted the existence of the Temporary Regulation in discussing the Tax Court's jurisdiction over the sham determination, *Petaluma II*, 591 F.3d at 652, the Temporary Regulation's validity was neither

questioned nor decided in that appeal. Even if *Petaluma II* in some sense assumed the validity of the Temporary Regulation, an issue "assumed" by an appellate court in an initial appeal does not become the law of the case; rather, the "law of the case doctrine does not apply where an issue was not raised before the prior panel and thus was not decided by it." *Yesudian, ex rel. U.S. v. Howard Univ.*, 270 F.3d 969, 972 (D.C. Cir. 2001). We therefore proceed to address the merits of Petaluma's challenge.

Petaluma's challenge to the Temporary Regulation presumes that the Tax Court would have jurisdiction in this partnership-level proceeding only if a valid regulation grants jurisdiction over sham partnerships. *Cf. Petaluma II*, 591 F.3d at 652. The IRS does not contest that premise. We briefly note, though, that it is unclear whether a regulation in fact is necessary to give the Tax Court jurisdiction to decide if a partnership is a sham and if penalties apply against the partners. The Supreme Court's opinion in *Woods* concluded that jurisdiction exists over those matters in partnership-level proceedings; and in reaching that conclusion, the Court relied solely on TEFRA's base jurisdictional statute, § 6226(f), without referencing either the statute extending TEFRA's provisions to sham partnerships "to the extent provided in regulations," § 6233(b), or any resulting regulation. *See* 134 S. Ct. at 563-65. The *Woods* Court thus may have assumed that jurisdiction exists in the circumstances of this case by virtue of § 6226(f) alone, without regard to regulations implementing § 6233(b).

We have no need to resolve that issue, however. Even assuming arguendo that the Tax Court's jurisdiction in this case depends on the existence of a valid regulation issued under § 6233(b) extending TEFRA's provisions to sham partnerships, Petaluma's jurisdictional argument fails.

Petaluma aims at the wrong target: Petaluma challenges the validity of the Temporary Regulation, but the pertinent regulation is a later-promulgated, final regulation, Treasury Regulation § 301.6233-1 (2001) (the Final Regulation).

The history of the regulations promulgated pursuant to § 6233 demonstrates the salience of the Final Regulation rather than the Temporary Regulation. In 1986, Treasury proposed a group of regulations implementing TEFRA, including one carrying out § 6233's invitation to extend TEFRA's provisions to sham partnerships by regulation. Prop. Treas. Reg. § 301.6233-1, 51 Fed. Reg. 13,231, 13,249-50 (Apr. 18, 1986). That proposed regulation stated that "[a]ny [FPAA] or judicial determination . . . may include a [sham] determination" as well as determinations of other "partnership" items of the entity deemed to be a sham. Prop. Treas. Reg. § 301.6233-1(a), (c)(1). The following year, Treasury issued the Temporary Regulation, which gave effect to the proposed regulations on an interim basis. The Temporary Regulation contained the same language applying TEFRA's provisions to sham partnerships. Temp. Treas. Reg. § 301.6233-1T. And both the 1986 proposed regulation and the Temporary Regulation applied by their terms "with respect to any taxable year beginning after September 3, 1982." Temp. Treas. Reg. § 301.6233-1T(e); Prop. Treas. Reg. § 301.6233-1(e).

The Temporary Regulation proved to be less temporary than perhaps initially envisioned, remaining in effect for more than a decade. But it was eventually displaced by the Final Regulation. In 1999, Treasury issued a "notice of proposed rulemaking by cross-reference to" the Temporary Regulation, conveying the department's intent to "finalize" the Temporary Regulation. Modifications and Additions to the Unified Partnership Audit Procedures, 64 Fed. Reg. 3886, 3886-87

(Jan. 26, 1999). Treasury realized that intention in 2001 by promulgating the Final Regulation. *See* Treas. Reg. § 301.6233-1. Although the Final and Temporary Regulations differ in certain limited respects of no consequence here, *compare* Temp. Treas. Reg. § 301.6233-1T(b), (c)(2), *with* Treas. Reg. § 301.6233-1(b), the Final Regulation's language applying TEFRA's provisions to sham partnerships parrots the corresponding language of the Temporary Regulation, *see* Treas. Reg. § 301.6233-1(a), (b); Temp. Treas. Reg. § 301.6233-1T(a), (c)(1).

The Final Regulation applies to all tax years, but it adopts a bifurcated approach depending on the tax year in question. First, the Final Regulation's provisions control with regard to "taxable years beginning on or after October 4, 2001," the date of the Final Regulation's adoption. Treas. Reg. § 301.6233-1(d). Second, for taxable "years beginning prior to October 4, 2001," the Final Regulation says to "see § 301.6233-1T," *i.e.*, the Temporary Regulation. *Id*. The rules set forth in the Temporary Regulation thus control for taxable years beginning before October 4, 2001, a period that includes the tax year at issue here (2000).

While the rules set out in the Temporary Regulation apply to those past tax years per the direction of the Final Regulation, the Temporary Regulation itself does not continue to apply. To the contrary, the Temporary Regulation ceased having effect upon adoption of the Final Regulation. Indeed, the "Action" undertaken by the Final Regulation included "removal of temporary regulations," Unified Partnership Audit Procedures, 66 Fed. Reg. 50,541, 50,541 (Oct. 4, 2001), and the Final Regulation correspondingly directed that "Section 301.6233-1T [the Temporary Regulation] is removed" from the Code of Federal Regulations. Unified Partnership Audit Procedures, 66 Fed. Reg. at 50,563 ¶ 53a;

*compare* 26 C.F.R. § 301.6233-1T (2001), *with* 26 C.F.R. § 301.6233-1 (2002). The upshot is that the Final Regulation controls for all tax years; but as to tax years commencing before October 4, 2001, the Final Regulation effectively incorporates the rules set forth in the no-longer-operative Temporary Regulation.

Because the Final Regulation is the operative regulation, Petaluma's procedural challenges to the now-obsolete Temporary Regulation are misdirected. Any procedural deficiency afflicting the Temporary Regulation is of no continuing significance. Rather, the Final Regulation now prescribes the rules applicable to all tax years, including pre-October 1, 2001, tax years. And because Petaluma challenges only the Temporary Regulation—not the Final Regulation—under the APA's notice-and-comment and thirty-day-publication provisions, its jurisdictional argument necessarily fails. Nor are we aware of any basis on which Petaluma could assert those same procedural challenges against the Final Regulation.

With regard to Petaluma's principal challenge, concerning the APA's notice-and-comment rules, *see* 5 U.S.C. § 553(c), the IRS in 1999 issued a notice of proposed rulemaking in connection with the Final Regulation. Modifications and Additions to the Unified Partnership Audit Procedures, 64 Fed. Reg. at 3886. In that notice, the IRS made clear that it "intend[ed] to finalize" the Temporary Regulation, it observed that the "text of [the] temporary regulations . . . generally serves as the text of these proposed regulations," and it invited the submission of comments. *Id.* at 3886-87. In communicating its intention to "finalize" the Temporary Regulation, *id.*, the IRS gave notice that the rules set forth in the Temporary Regulation would continue to apply—as that regulation itself prescribed—"with respect to

any taxable year beginning after September 3, 1982." Temp. Treas. Reg. § 301.6233-1T(e). The agency received no written comments in response to its proposed finalization of the Temporary Regulation. *See* Unified Partnership Audit Procedures, 66 Fed. Reg. at 50,542.

We note, though, that the IRS evidently had previously received "[s]everal comments" in 1986 when it initially proposed a regulation applying TEFRA to sham partnerships. *See* Miscellaneous Provisions Relating to the Tax Treatment of Partnership Items, 52 Fed. Reg. 6779, 6780 (Mar. 5, 1987). When the IRS later proposed to finalize the Temporary Regulation in 1999, it explained that it would take into account those previous comments, stating that "[c]omments previously received in connection with the [Temporary Regulation] will be considered as well as new or additional comments." Modifications and Additions to the Unified Partnership Audit Procedures, 64 Fed. Reg. at 3887. It is unclear from the record whether any of the previous comments specifically pertained to the proposed regulation extending TEFRA to sham partnerships or whether those comments instead concerned some other aspect of the broader set of regulations proposed at that time.

While the IRS did not specifically discuss the prior comments when it adopted the Final Regulation, an agency's "failure to address a particular comment or category of comments is not an APA violation *per se*." *Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012). And in any event, "the court will not set aside a rule" for failure to comply with § 553's notice and comment requirements unless a party has shown that it "suffered prejudice from the agency's failure." *Am. Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 237 (D.C. Cir. 2008) (internal quotations omitted); *see* 5 U.S.C. § 706. Here, Petaluma identifies no comment it

believes the IRS erroneously disregarded.  We therefore have no reason to conclude that the agency failed to "base" its "decision . . . on a consideration of the relevant factors." *Thompson v. Clark*, 741 F.2d 401, 409 (D.C. Cir. 1984).

Nor could Petaluma challenge the Final Regulation on the ground that it infringes 5 U.S.C. § 553(d), which generally calls for "publication" of a "substantive rule . . . not less than 30 days before its effective date."  The Final Regulation went into effect immediately upon adoption, without any 30-day deferral.  Treas. Reg. § 301.6233-1(d).  We need not address, however, whether there was any breach of § 553(d).  As with the APA's notice and comment rules, the thirty-day notice requirement of § 553(d) is subject "to the rule of prejudicial error."  5 U.S.C. § 706; *see United States v. Dean*, 604 F.3d 1275, 1288 (11th Cir. 2010).  There is no basis for supposing that Petaluma could have suffered any prejudice as a consequence of the agency's decision to make the Final Regulation effective upon promulgation.  Indeed, as the IRS observed at the time of the Final Regulation's adoption, "[t]axpayers and the IRS ha[d] been operating under [the same] rules since they were promulgated as temporary regulations" in 1987.  Unified Partnership Audit Procedures, 66 Fed. Reg. at 50,542.

We therefore conclude that, assuming there is a need for a regulation to confer jurisdiction in the Tax Court in this case, the Final Regulation does so.  We acknowledge that the IRS, in its reply brief, responded to Petaluma's challenges to the Temporary Regulation on the merits, without noting or discussing the possibility that the Final Regulation in fact is the operative regulation.  In the course of examining the challenge raised by Petaluma, we have concluded, for the reasons explained, that the Final Regulation governs the Tax Court's jurisdiction.

Finally, Petaluma raises a challenge to a separate regulation, Treasury Regulation § 1.6662-5(g) (1991), addressed to the calculation of accuracy-related penalties when a taxpayer's adjusted basis is zero. Under that regulation, "[t]he value or adjusted basis claimed . . . is considered to be 400 percent or more of the correct amount." *Id*. Petaluma contends that the regulation conflicts with the mathematical rule prohibiting division by zero, an argument noted (but not resolved) by the Supreme Court in *Woods*. 134 S. Ct. at 566 n.4. We, too, do not reach the merits of the argument. Unlike with Petaluma's challenge to the Temporary Regulation, the IRS argues that Petaluma forfeited its challenge to § 1.6662-5(g) by failing to raise it until this late stage of the case. *See, e.g.*, *Hartman v. Duffey*, 88 F.3d 1232, 1236 (D.C. Cir. 1996). We agree.

\* \* \* \* \*

For the foregoing reasons, the judgment of the Tax Court with respect to its jurisdiction to determine the applicability of penalties in partnership-level proceedings is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered*.