T.C. Memo. 2018-201

UNITED STATES TAX COURT

RAGHUNATHAN SARMA AND GAILE SARMA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26318-16.                    Filed December 12, 2018.

<u>Charles E. Hodges II</u>, <u>Antoinette G. Ellison</u>, and <u>Aditya Shrivastava</u>, for
petitioners.

<u>Leslie J. Spiegel</u> and <u>Craig Connell</u>, for respondent.

MEMORANDUM OPINION

GOEKE, <u>Judge</u>:  This case is before us on the parties' cross-motions to

dismiss for lack of jurisdiction following respondent's issuance of an affected item

[*2] notice of deficiency. The parties submitted a declaration of witnesses with attached exhibits.[1]

Background

When the petition was filed, petitioner Raghunathan Sarma resided in Florida. Petitioner Gaile Sarma had a mailing address in New Jersey; the record does not provide her State of residence. During the years at issue petitioners were married and filed joint tax returns. They divorced in 2005.

The adjustments in the notice of deficiency arise from Raghunathan Sarma's participation in a tax shelter known as a "Family Office Customized partnership" or "FOCus", a transaction substantially similar to the transaction described in Notice 2002-50, 2002-2 C.B. 98. Mr. Sarma implemented the FOCus tax shelter through a series of transactions executed by a three-tiered set of limited liability companies treated as partnerships for Federal tax purposes:[2] the upper tier partnership, Nebraska Partners Fund, LLC (Nebraska Partners or Nebraska), the middle-tier partnership, Lincoln Partners Fund, LLC (Lincoln Partners or

_____

[1]Respondent disputes that the declaration and exhibits submitted by petitioners allow us to grant petitioners' motion to dismiss. We will deny petitioners' motion and do not need to address the factual disputes. In response to respondent's motion, petitioners state that the material facts are not in dispute.

[2]For simplicity, we refer to the entities as partnerships.

[*3] Lincoln), and the lower tier partnership, Kearney Partners Fund, LLC (Kearney Partners or Kearney). The tax shelter resulted in a series of deemed terminations of the partnerships and deemed formations of new partnerships because of changes in the ownership of the partnerships, including Mr. Sarma's purchases of Lincoln Partners and Nebraska Partners. Because of the deemed terminations, the partnerships filed tax returns for multiple short tax periods during 2001. Lincoln and Kearney were subject to the unified partnership audit and litigation procedures (TEFRA) under sections 6221 through 6234 for short tax periods (TEFRA tax periods) when Mr. Sarma did not formally own direct interests in the partnerships.[3] He was an indirect partner in both partnerships during certain TEFRA tax periods. Of significance, Lincoln Partners was not subject to TEFRA for the short tax period that Mr. Sarma held a direct interest in it because it fell within the small partnership exception to TEFRA under section 6231(a)(1)(B) (small partnership tax period) and did not elect to be subject to TEFRA.

---

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All amounts are rounded to the nearest dollar.

**[*4]** The issues for consideration are: (1) whether respondent is bound by an initial decision (later abandoned) to audit Lincoln Partners' return for the small partnership tax period under the TEFRA procedures; we hold he is not; (2) whether the special statute of limitations rules for TEFRA partnerships under section 6229 apply for petitioners' 2001 tax year; we hold they do; (3) whether a partner-level determination is required to adjust petitioners' tax liabilities following the decision in the TEFRA case; we hold it is; and (4) whether respondent issued invalid multiple notices of deficiency; we hold he did not.

## I. Tax Shelter Transactions

Nebraska Partners and Lincoln Partners were formed on October 17, 2001. The date of Kearney Partners' organization is not stated in the record. As of December 4, 2001, as part of the structure of the FOCus tax shelter, Nebraska Partners owned 99% of Lincoln Partners, and Lincoln Partners owned 99% of Kearney Partners. Bricolage Capital Management Co., a C corporation, was a 1% partner in Nebraska and Lincoln and the tax matters partner of each. Delta Currency Management Co. was a 1% partner and the tax matters partner of Kearney Partners. Each of the three partnerships filed a partnership tax return for the short tax period of October 17 to November 20, 2001 (November 20, 2001, tax period), before Mr. Sarma acquired an ownership interest in the partnerships.

[*5]    The tax shelter involved three transactions relating to ownership changes of the partnerships within the tiered structure.  On December 4, 2001, Mr. Sarma purchased a 99% interest in Nebraska Partners.  All three partnerships terminated their tax periods on December 4, 2001, pursuant to section 708(b)(1)(B), for short tax periods of November 21 to December 4, 2001 (December 4, 2001, tax period). See sec. 1.708-1(b)(2), Income Tax Regs. (providing that a partnership and any lower tier partnerships shall terminate when 50% or more of the total interest in the partnership's capital and profits is sold or exchanged within a 12-month period).  New partnerships were deemed to be formed for the three partnerships, and the partnerships treated their new tax periods as beginning on December 5, 2001.[4]  See id. para. (b)(4) (providing that when a partnership is deemed to terminate by a sale or exchange of an interest, the partnership is deemed to contribute its assets and liabilities to a new partnership in exchange for an interest in the new partnership, and the terminated partnership is deemed to distribute interests in the new partnership to the purchasing partner and other remaining partners in liquidation of the terminated partnership).  Each of the three

---

[4]Respondent did not contest the December 5, 2001, date used for the beginning of the partnerships' tax periods.

[*6] partnerships filed a partnership tax return for the December 4, 2001, tax period on the basis of its deemed termination.

On December 14, 2001, Mr. Sarma purchased a 99% interest in Lincoln Partners from Nebraska Partners; Mr. Sarma already indirectly owned Lincoln Partners through Nebraska Partners. Mr. Sarma directly held the partnership interest in Lincoln Partners for the remainder of 2001. On December 14, 2001, Lincoln and Kearney terminated their tax periods pursuant to section 708(b)(1)(B) on the basis of Mr. Sarma's purchase of Lincoln Partners, and two new partnerships were deemed to be organized. See sec. 1.708-1(b)(4), Income Tax Regs. Both Lincoln and Kearney reported short tax periods of December 5 to 14, 2001 (December 14, 2001, tax period). On December 19, 2001, Lincoln Partners, with Mr. Sarma as a 99% partner, sold its 99% interest in Kearney Partners for $737,118 to Fermium II Partners Fund, LLC, an entity related to the tax shelter promoter. As a result of the sale, Kearney Partners terminated its tax period, reporting a short tax period of December 15 to 19, 2001 (December 19, 2001, tax period). Lincoln Partners filed a partnership return for the short tax period of December 15 to 31, 2001 (December 31, 2001, tax period), and continued to file returns for 2002 through 2004 with Mr. Sarma as its partner.

[*7]  Beginning before December 4, 2001, the date Mr. Sarma purchased his Nebraska partnership interest, through December 19, 2001, the date Lincoln sold its Kearney Partners interest, Kearney Partners executed offsetting foreign currency options (FX straddles) generating significant artificial gains and losses. At the time of Lincoln's sale of its Kearney partnership interest, Kearney Partners held $737,118 in cash and certificates of deposit totaling $81,794,837.[5]  It had unrealized losses from the FX straddles that had not been closed out, but it also had realized gain from the FX straddles.  Lincoln Partners claimed that it had an outside basis in its Kearney partnership interest at the time of the sale of $79,110,062 on the basis of the gain from the FX straddles.  It did not account for the unrealized losses, however.  Lincoln Partners reported a short-term capital loss of $78,392,194 on the sale of its Kearney partnership interest (Lincoln loss) for its December 31, 2001, tax period.  It allocated $77,608,272 of the Lincoln loss to Mr. Sarma as its 99% partner (Sarma loss).  Petitioners claimed a deduction for the Sarma loss on their 2001 joint tax return and carried forward portions of the loss to 2002 through 2004.

---

[5]Kearney Partners retained the certificates of deposit and cash when Lincoln sold its Kearney partnership interest.  Mr. Sarma did not receive any distributions from Kearney Partners upon Lincoln's sale of the Kearney partnership interest.

**[*8]** On the basis of the above transactions, Lincoln Partners filed partnership tax returns for the following three short tax periods during which Mr. Sarma owned an indirect or direct interest: (1) the December 4, 2001, tax period, (2) the December 14, 2001, tax period, and (3) the December 31, 2001, tax period. Lincoln Partners was subject to TEFRA for the first two tax periods, December 4 and 14, 2001. For a portion of Lincoln's December 31, 2001, tax period, from December 15 to 19, 2001, Lincoln was a 99% partner of Kearney, and Kearney was subject to TEFRA during that time. Lincoln was a small partnership exempt from TEFRA for its December 31, 2001, tax period, the only tax period that Mr. Sarma was a direct partner. Lincoln Partners' return for its December 31, 2001, tax period (December 31, 2001, return) shows that it had two partners and neither partner was the type that would cause TEFRA to automatically apply. Lincoln did not attach a statement to its December 31, 2001, tax return electing to opt out of the small partnership exception and to apply TEFRA. See sec. 301.6231(a)(1)-1(b)(2), Proced. & Admin. Regs. (a small partnership may elect to apply TEFRA by filing an attachment to its return). On its December 31, 2001 tax return, Lincoln Partners answered "yes" on line 4 of Schedule B to the question of whether it was subject to TEFRA and named a tax matters partner.

**[*9]** During Lincoln's December 31, 2001 tax period, Mr. Sarma contributed

$36.5 million in cash to Lincoln Partners. The record does not establish whether

the contribution occurred before or after Lincoln sold its interest in Kearney

Partners. However, Mr. Sarma's outside basis in Lincoln is not at issue here. Mr.

Sarma also guaranteed a $38.8 million loan used to execute the FX straddles. The

lender did not require the guaranty from Mr. Sarma as the FX straddles did not

result in any risk to the lender. Kearney Partners Fund, LLC ex rel. Lincoln

Partners Fund v. United States (Kearney), No. 2:10-cv-153-FtM-37CM, 2014 WL

905459, at *9 (M.D. Fla. Mar. 7, 2014), aff'd per curiam, 803 F.3d 1280 (11th Cir.

2015).

II.    Procedural History

In May 2003 the Internal Revenue Service (IRS) began an examination of

petitioners' 2001 return. Revenue Agent Barbara Rickard issued notices of

beginning of administrative proceeding (NBAP) dated June 6, 2003, to the three

partnerships for the following 10 tax periods:

[*10]

| Partnership | Tax period |
|---|---|
| Nebraska Partners | Nov. 20, 2001<br>Dec. 4, 2001 |
| Lincoln Partners | Nov. 20, 2001<br>Dec. 4, 2001<br>Dec. 14, 2001 |
| Kearney Partners | Nov. 20, 2001<br>Dec. 4, 2001<br>Dec. 14, 2001<br>Dec. 19, 2001<br>Dec. 31, 2001 |

Subsequently, Revenue Agent Rickard issued NBAPs dated April 6 and March 10, 2004, for Nebraska Partners' and Lincoln Partners' December 31, 2001, tax periods, respectively. Respondent did not issue the NBAPs to Mr. Sarma. Mr. Sarma was not a notice partner to whom respondent was required to issue an NBAP. See sec. 6223(a) (requiring the Commissioner to issue notice partners notices of the beginning and end of a partnership audit). In mid-2004 the examination for the partnerships was transferred to Revenue Agent Linda Scheick. In late 2004 she determined that neither Lincoln Partners nor Nebraska Partners was subject to TEFRA for its December 31, 2001, tax period because both fell within the small partnership exception and accordingly the NBAPs were issued in

[*11] error. She did not solicit a written extension of the period of limitations for Nebraska's or Lincoln's December 31, 2001, tax period.

On July 31, 2009, respondent issued a notice of deficiency to petitioners for 2001 through 2004 (2009 notice), adjusting partnership and/or affected items of the three partnerships relating to the partnerships' November 20, 2001, tax periods and items unrelated to any of the three partnerships. Respondent determined that the three partnerships were shams and raised economic substance, step transaction, substance over form, and other issues relating to the FOCus tax shelter. The notice stated that it was for protective purposes in the event that the adjustments were not subject to partnership-level proceedings under TEFRA. Petitioners filed a petition with this Court and a motion to dismiss for lack of jurisdiction as to the partnership and affected items on the basis that the partnerships were subject to TEFRA. Respondent did not object to the motion but filed a response explaining his position that the Court lacked jurisdiction over the partnership and affected items. He asserted that both Lincoln Partners and Nebraska Partners were small partnerships exempt from TEFRA for their December 31, 2001, tax periods. Respondent's Response to Petitioner's Motion to Dismiss, Sarma v. Commissioner (Sarma I), T.C. Dkt. No. 25694-09 (Nov. 16, 2012). Respondent identified the Sarma loss as an affected item and asserted that Lincoln's outside basis in its

[*12] Kearney partnership interest is an affected item determined with reference to the three partnerships' TEFRA tax periods. The Court dismissed the partnership and affected items on the basis of lack of jurisdiction in an order dated November 1, 2010. The parties settled the remaining adjustments. The November 16, 2012, decision document included the following stipulation:

> Mr. Sarma does not concede that he has an interest in the outcome under I.R.C. § 6226(d) of any partnership proceedings involving Kearney, Lincoln, and Nebraska * * * or that any adjustment made to partnership items impacts the tax liabilities of Petitioners for tax years 2001, 2002, 2003, and/or 2004.

On December 9, 2009, respondent issued nine notices of final partnership administrative adjustment (FPAAs) to Nebraska Partners, Lincoln Partners, and Kearney Partners for their TEFRA tax periods for which the IRS had issued NBAPs, see supra pp. 9-10, except that he did not issue FPAAs for Nebraska's and Lincoln's small partnership tax periods, the December 31, 2001, tax periods. In the FPAAs respondent determined that the three partnerships were disregarded for tax purposes and reallocated their income, loss, and expenses to Mr. Sarma, including those for their November 20, 2001, and December 4, 2001, tax periods when Mr. Sarma was neither a direct nor indirect partner. He disallowed the Lincoln loss on the basis that the partnerships were abusive tax shelters designed to generate artificial tax losses. Mr. Sarma did not directly own any interest in the

[*13] partnerships for the TEFRA tax periods.  However, he did own indirect interests for certain TEFRA tax periods.

Respondent included a letter with the FPAAs mailed to Mr. Sarma stating that he had the right to elect to have his partnership items treated as nonpartnership items and thereby opt out of TEFRA under section 6223(e) because of the IRS' failure to timely issue NBAPs to him.  See sec. 6223(d) (requiring the Commissioner to issue an NBAP at least 120 days before issuing an FPAA) and (e) (providing the right to opt out of TEFRA for notice partners who did not timely receive an NBAP).  On January 23, 2010, Mr. Sarma filed an election with the IRS opting out of TEFRA.  Respondent in a letter dated February 25, 2010, stated that he had erred and Mr. Sarma did not have the right to opt out of TEFRA because he did not have the right to receive an NBAP.  On December 3, 2010, respondent issued a protective converted items notice of deficiency to petitioners for 2001 through 2004 (2010 notice) because of Mr. Sarma's attempted election to opt out of TEFRA.  The 2010 notice contained the same adjustments to partnership and affected items as the 2009 notice but did not contain the adjustments unrelated to the three partnerships.  Respondent filed a motion to dismiss for lack of jurisdiction, arguing petitioners did not have the right to opt out of TEFRA.  Petitioners argued that Mr. Sarma had the right to opt out and that the

**[\*14]** 2010 notice was invalid on different grounds. The Court granted respondent's motion to dismiss, noting the parties agreed that the notice was invalid. Sarma v. Commissioner, T.C. Dkt. No. 5307-11 (Mar. 16, 2012).

In response to the FPAAs the partnerships filed complaints in the U.S. District Court for the Middle District of Florida, and their cases were consolidated. The partnerships filed a motion to dismiss for lack of personal and subject matter jurisdiction as to Mr. Sarma, arguing that he had the right to opt out of the TEFRA proceedings because he did not timely receive an NBAP. Kearney, No. 2:10-cv-153-FtM-SPC, 2013 WL 1232612 (M.D. Fla. Mar. 27, 2013) (order). The District Court denied the motion, holding that Mr. Sarma did not have a right to receive an NBAP and therefore did not have the right to opt out of TEFRA. Id. at \*5; see sec. 6223(a); sec. 301.6223(c)-1, Proced. & Admin. Regs. (providing manner for partners to become notice partners).

Following a bench trial the District Court upheld the disallowance of the Lincoln loss deduction but held that the plaintiffs were not subject to a section 6662(a) accuracy-related penalty on the basis of Mr. Sarma's participation in the voluntary disclosure program described in Notice 2002-2, 2002-1 C.B. 304. Kearney, No 2:10-cv-153-FtM-SPC, 2014 WL 905459 (M.D. Fla. Mar. 7, 2014). The District Court found that Mr. Sarma "schemed to create and operate the

**[\*15]** partnerships (even before Mr. Sarma formally purchased them) to serve as an abusive tax shelter". Id. at \*1. The District Court held: "The FPAAs properly found that the partnerships lacked economic substance and made adjustments accordingly". Id. at \*14. It found that every step of the FOCus tax shelter, including the creation of the partnerships, the FX straddles, Mr. Sarma's purchase of Nebraska and Lincoln, the capital contributions, the guaranty, and the sale of Kearney, was "solely motivated by tax-avoidance."[6] Id. at \*13. It found that "the transactions at issue lacked both economic effects and a legitimate business purpose and thus are not entitled to tax respect." Id.

The District Court entered a judgment "in favor of Defendant and against Plaintiffs as to the lack of economic substance of the partnerships and adjustments in the FPAAs", holding that the FPAA adjustments that reallocated income and/or loss to Mr. Sarma in his individual capacity were moot and not upheld. The District Court did not make a finding with respect to Lincoln Partners' outside basis in its Kearney partnership interest. The U.S. Court of Appeals for the Eleventh Circuit affirmed the decision on October 13, 2015. Kearney, 803 F.3d 1280.

---

[6]The District Court erroneously stated that Mr. Sarma, rather than Lincoln Partners, sold the 99% interest in Kearney Partners. We find this error is immaterial to our decision.

[*16] On September 9, 2016, respondent issued an affected items notice of deficiency (2016 notice) to petitioners for 2001 through 2004. The adjustments in the 2016 notice arise from Mr. Sarma's participation in the FOCus tax shelter. In the notice respondent disallowed the deduction of petitioners' share of the Lincoln loss on the sale of the Kearney partnership interest, i.e., the Sarma loss, for 2001 and the capital loss carryforwards for 2002 through 2004 on the basis that Kearney Partners and Lincoln Partners were shams and disregarded for tax purposes. The disallowance of the Sarma loss deduction was the only adjustment except for adjustments to itemized deductions on the basis of statutory limitations as a result of the loss deduction disallowance. On December 14, 2016, respondent assessed the tax against petitioners with respect to the adjustments asserted in the 2016 notice and issued a notice of computational adjustment for each year. He issued the 2016 notice for protective purposes.

III.    Nebraska Partners

Nebraska Partners filed a partnership tax return for the short tax period December 5 to 31, 2001, during which it was a small partnership exempt from TEFRA. Mr. Sarma directly owned the Nebraska partnership interest from December 5 to 31, 2001. Nebraska reported a capital loss of $77,613,999 from the sale of its partnership interest in Lincoln Partners to Mr. Sarma (Nebraska loss) on

[*17] December 14, 2001, and treated the loss deduction as disallowed under section 707(b)(1). See sec. 707(b)(1) (providing that no loss deduction shall be allowed from the sale of property between a partnership and a direct or indirect partner owning more than a 50% capital or profits interest in the partnership). On their 2001 joint tax return petitioners reported the Nebraska loss deduction as disallowed. Treatment of the Nebraska loss is not at issue. Respondent did not issue an FPAA to Nebraska Partners for the December 5 to 31, 2001, tax period.

## Discussion

The parties agree that Lincoln Partners satisfied the definition of a small partnership under section 6231(a)(1)(B) and was exempt from TEFRA for its December 31, 2001, tax period, the period of 2001 during which Mr. Sarma was a direct partner.[7] Mr. Sarma was an indirect partner in Lincoln during its December 14, 2001, TEFRA tax period. See sec. 6231(a)(10) (defining an indirect partner as a "person holding an interest in a partnership through 1 or more pass-through

---

[7]A small partnership is defined as a partnership with 10 or fewer partners who are individuals (other than nonresident aliens), C corporations, or estates of deceased partners. Sec. 6231(a)(1)(B)(i). A partnership's status as a small partnership is determined annually "with respect to each partnership taxable year." Sec. 301.6231(a)(1)-1(a)(3), Proced. & Admin. Regs. A partnership cannot qualify as a small partnership if any partner is a passthrough partner. Id. subpara. (2). A passthrough partner is "a partnership, estate, trust, S corporation, nominee, or other similar person through whom other persons hold an interest in the partnership". Sec. 6231(a)(9) (defining a passthrough partner).

[*18] partners"). Lincoln Partners was a 99% partner of Kearney Partners for Kearney's December 19, 2001, TEFRA tax period, during which time Mr. Sarma was an indirect partner in Lincoln and Kearney.

## I.     Parties' Arguments

Petitioners make three arguments in support of their motion to dismiss. They argue that the Court should dismiss this case whether we apply the TEFRA procedures or the normal deficiency procedures of subchapter B of chapter 63 of the Code. The first two arguments depend on whether TEFRA applies despite Lincoln's status as a small partnership for its December 31, 2001, tax period. First, they argue that TEFRA applies for Lincoln's December 31, 2001, tax period because the IRS determined that TEFRA applied when it issued an NBAP and respondent is bound by that determination. They argue that respondent failed to issue the required FPAA, the 2016 notice is invalid, and the Court lacks jurisdiction over this case. As an alternative argument, petitioners contend that if we treat Lincoln Partners as a small partnership exempt from TEFRA, we must also dismiss. They argue that if Lincoln is a small partnership for its December 31, 2001, tax period, the special statute of limitations rules applicable for TEFRA partnerships under section 6229 likewise do not apply for the December 31, 2001, tax period. They argue that the period of limitations is determined under section

[*19] 6501 and expired no later than February 16, 2013, more than three years before the 2016 notice was issued. Respondent counters that the adjustments relate to partnership items from Kearney's and Lincoln's prior TEFRA tax periods even though Lincoln was a small partnership exempt from TEFRA for its December 31, 2001, tax period. Third, petitioners argue that if we find that the statute of limitations does not bar assessment, the 2016 notice is invalid because respondent previously issued two deficiency notices for 2001 through 2004.

Respondent filed a cross-motion to dismiss, also arguing that the 2016 notice is invalid. He argues that the adjustments in the 2016 notice do not require a partner-level determination and therefore are not subject to the deficiency procedures. He argues that the partnership-level case determined that Kearney Partners was a sham and thus Lincoln cannot have an outside basis in its Kearney partnership interest in excess of zero, citing United States v. Woods, 571 U.S. 31 (2013). He argues that no partner-level determinations are required to adjust Lincoln's outside basis to zero because taxpayers cannot have basis in an asset that does not exist for Federal tax purposes. According to respondent's argument, outside basis is always zero in a sham partnership and the adjustments at issue are computational and do not require the issuance of deficiency notices. Accordingly,

[*20] he argues that the 2016 notice is invalid and we do not have jurisdiction in this case.

This Court is a court of limited jurisdiction; we may exercise our jurisdiction only to the extent provided by statute. See sec. 7442; GAF Corp. & Subs. v. Commissioner, 114 T.C. 519, 521 (2000). We have jurisdiction to redetermine a deficiency if the Commissioner issues a valid notice of deficiency and the taxpayer files a timely petition. GAF Corp. & Subs. v. Commissioner, 114 T.C. at 521.

II.    Application of TEFRA Procedures

Both parties agree that Lincoln Partners was a small partnership exempt from TEFRA for its December 31, 2001, tax period. However, petitioners argue that the IRS determined (although erroneously) through the issuance of the NBAP in December 2004 and the 2009 notice that TEFRA applied for Lincoln's December 31, 2001, tax period. They argue that respondent is bound by that determination pursuant to section 6231(g)(1) and was required to issue an FPAA for Lincoln's December 31, 2001, tax period to make the adjustments he seeks in this case. According to petitioners, respondent failed to issue an FPAA, and thus the Court lacks jurisdiction over Lincoln's December 31, 2001, tax period and lacks jurisdiction to disallow the Sarma loss deduction. We find that neither the

**[*21]** NBAP nor the 2009 notice constitutes a determination by respondent to treat Lincoln Partners as a TEFRA partnership for its December 31, 2001, tax period. For the reasons set forth below, we hold that respondent did not determine that TEFRA applied for Lincoln's December 31, 2001, tax period.

Under section 6231(g)(1), when the Commissioner erroneously determines that TEFRA applies to a non-TEFRA partnership, the partnership will be subject to TEFRA so long as that determination was reasonable on the basis of the partnership's tax return. When the Commissioner makes a reasonable but erroneous determination on the basis of a partnership return that TEFRA applies to a small partnership, a partnership that should be subject to the normal deficiency procedures will instead be subject to the TEFRA procedures. Conversely, TEFRA will not apply to a TEFRA partnership where the Commissioner has reasonably but erroneously determined on the basis of a partnership return that TEFRA does not apply. Sec. 6231(g)(2). Respondent maintains that he did not determine that TEFRA applied for Lincoln's December 31, 2001, tax period, and if the Court finds that he made such a determination, that determination was not reasonable because Lincoln Partners' December 31, 2001, tax return clearly shows that it was a small partnership and Lincoln did not file an attachment to the return electing to have TEFRA apply.

**[\*22]** Section 6231(g)(1) was intended to protect the Commissioner where he makes an erroneous determination on the basis of a partnership return that a small partnership is subject to TEFRA so long as his determination was reasonable. Bedrosian v. Commissioner, 143 T.C. 83, 104-105 (2014). It is a relief provision for the IRS. The Code grants this relief because of the difficulty that the IRS may have when determining whether a partnership is subject to TEFRA. Id. at 105. Congress' purpose for enacting section 6231(g) was "to simplify the IRS' task of choosing between the TEFRA procedures and the normal deficiency procedures by permitting the IRS to rely on the partnership's return." Id. However, petitioners attempt to use section 6231(g)(1) as a punitive measure against respondent on the basis of certain statements on Lincoln's December 31, 2001, return that conflict with its small partnership status.

On Lincoln's December 31, 2001, return it answered "yes" to question 4 asking whether TEFRA applied, and it named a tax matters partner. The return shows that the partnership had two partners and that neither partner was the type of partner that would cause TEFRA to automatically apply. See sec. 6231(a)(1)(B)(i) (setting forth the criteria for a small partnership). Notably, Lincoln Partners did not follow the rules set forth in the regulations or the 2001 Instructions for Form 1065, U.S. Partnership Return, which state: "Caution! This

[*23] partnership does not make this election when it answers Yes to Question 4. The election must be made separately." Lincoln did not attach a statement to its December 31, 2001, return to elect to have TEFRA apply as required by the regulations or Form 1065 Instructions. See sec. 6231(a)(1)(B)(ii); sec. 301.6231(a)(1)-1(b)(2), Proced. & Admin. Regs. (the method for a small partnership to elect to apply TEFRA is to attach a statement to its return).

If section 6231(g)(1) applies, it would render Lincoln Partners subject to TEFRA for the December 31, 2001, tax period even though the parties agree that it fell within the small partnership exception. For section 6231(g)(1) to apply, three events must occur: (1) the IRS determined on the basis of Lincoln Partners' return that it was subject to TEFRA, (2) the determination was erroneous, and (3) the determination was reasonable. When the Commissioner issues multiple notices with conflicting determinations regarding TEFRA's applicability, the first notice controls. Bedrosian v. Commissioner, 143 T.C. at 108 (the Commissioner issued an FPAA followed by a notice of deficiency). We conclude infra that respondent did not determine that TEFRA applied for Lincoln's December 31, 2001, tax period. The second factor is not at issue; the parties agree that such a

[*24] determination would have been erroneous because Lincoln was a small partnership for its December 31, 2001, tax period.[8]

In considering the first factor we must address a threshold question of whether the IRS made a determination that TEFRA applies, and a secondary question of what type of notice from the IRS constitutes a determination. Petitioners argue that the 2009 notice and the NBAP constitute a determination by respondent. We disagree. The 2009 notice is not a determination for purposes of section 6231(g). For section 6231(g) to apply, the Commissioner must make a single partnershipwide determination regarding TEFRA's applicability. Bedrosian v. Commissioner, 143 T.C. at 109. In the 2009 notice respondent determined that petitioners were not entitled to deduct the portion of the Lincoln loss allocated to Mr. Sarma. Respondent did not make a partnershipwide determination and accordingly did not make a determination regarding TEFRA's applicability for purposes of section 6231(g). As the 2009 notice was not a partnershipwide adjustment, the notice does not constitute a determination under section 6231(g).

Even if the 2009 notice made partnershipwide adjustments, the notice could not constitute a determination because it was invalid as to the adjustments relating

---

[8]As we find that respondent did not determine that TEFRA applied for Lincoln's December 31, 2001, tax period, we do not consider whether such a determination would have been reasonable, the third factor.

[*25] to the partnership and affected items. We dismissed the partnership and affected items in Sarma I. Petitioners argue that the dismissal in Sarma I is consistent with a determination that TEFRA applied for Lincoln's December 31, 2001, tax period. They characterize the decision in Sarma I as finding that Mr. Sarma would not have affected items from Kearney and Kearney cannot affect their 2001 tax liability. However, our decision to dismiss with respect to the partnership and affected items did not result from a finding that Lincoln's December 31, 2001, tax period was subject to TEFRA. While petitioners argued for dismissal in Sarma I as to the partnership and affected items adjustments, respondent issued the 2009 notice with respect to these adjustments for protective purposes. In Sarma I respondent stated to the Court that Lincoln was a small partnership for its December 31, 2001, tax period and the three partnerships were subject to TEFRA for "certain" tax periods during 2001 in clear contradiction to petitioners' characterization of that case. Respondent did not take the position that TEFRA applied for Lincoln's December 31, 2001, tax period. Rather, the decision in Sarma I is consistent with a determination that Lincoln is not subject to TEFRA for its December 31, 2001, tax period.

Nor does the NBAP constitute a determination by the Commissioner that TEFRA applies for purposes of section 6231(g). The Commissioner makes a

[*26] determination when he issues the notice that concludes the examination. Bedrosian v. Commissioner, 143 T.C. at 106-107. We have held that an FPAA is the Commissioner's determination of TEFRA's applicability; inherent in the issuance of an FPAA is a determination that TEFRA applies. Id. at 107; see Clovis I v. Commissioner, 88 T.C. 980, 982 (1987). Respondent did not issue an FPAA for Lincoln's December 31, 2001, tax period. Accordingly, he did not make a determination that TEFRA applied for that tax period. See Bedrosian v. Commissioner, 143 T.C. at 107-108 (events occurring during the examination are not determinative as to whether TEFRA applies). Furthermore, nothing in the Code nor the regulations requires the Commissioner to make an adjustment or issue a notice following the conclusion of an audit. See sec. 6223 (relating to issuance of notices at beginning and conclusion of partnership audit). We hold that section 6231(g) does not apply, and Lincoln's December 31, 2001, tax period is not subject to TEFRA.

Petitioners also argue that the NBAP should control because Mr. Sarma did not receive notice at the end of Lincoln's audit that TEFRA did not apply for Lincoln's December 31, 2001, tax period. They argue that they reasonably relied on the NBAP and reasonably expected respondent to issue an FPAA. They argue that respondent had a duty to inform them that he would not issue an FPAA and

[*27] did not notify them that one would not be issued. They argue that the issuance of the NBAP should control because the Commissioner must determine whether to apply TEFRA or the normal deficiency procedures at the beginning of a partnership audit. They emphasize the importance of the beginning of the audit because, they argue, if TEFRA does not apply, the Commissioner must deal directly with each partner during the audit rather than the TEFRA tax matters partner. They rely on a statement in Harrell v. Commissioner, 91 T.C. 242, 246 (1988), that a determination "should be made by respondent as of the date of commencement of the audit of the partnership (but not necessarily on that date) by examining the partnership return * * * prior to this date." Harrell does not support petitioners' argument that the Commissioner must definitively determine TEFRA's applicability at the beginning of the audit or that a revenue agent's initial decision to issue an NBAP controls. It was not reasonable for Mr. Sarma to expect respondent to issue an FPAA for Lincoln's December 31, 2001, tax period as its status as a small partnership is clear on the partnership return and it did not file the required attachment to make an election.

Moreover, respondent did not have a duty to inform petitioners that he would not issue an FPAA. Petitioners do not cite any authority in the Code or the regulations to support their argument that respondent had such a duty. There is no

[*28] basis to impose a duty on respondent to inform petitioners that he would not issue an FPAA. In Sarma I respondent stated that Lincoln was a small partnership for the December 31, 2001, tax period, so petitioners should have known no FPAA would be issued. Revenue Agent Rickard issued an NBAP for Lincoln's December 31, 2001, tax period and information document requests to Lincoln's tax matters partner. In mid-2004 the examination of the partnerships' and petitioners' returns was transferred to Revenue Agent Scheick, and she determined that TEFRA did not apply for that tax period. She began treating Lincoln Partners as a non-TEFRA partnership for its December 31, 2001, tax period approximately one year after the NBAP for Lincoln was issued and approximately five years before the 2009 notice and the FPAAs for the TEFRA tax periods were issued. Under these facts any expectation on Mr. Sarma's part that respondent would issue an FPAA for Lincoln's December 31, 2001, tax period would not have been reasonable.

In summary, respondent was not required to issue an FPAA for Lincoln's December 31, 2001, tax period to make the adjustments he seeks in this case. We will deny petitioners' motion to dismiss with respect to this argument.

**[\*29]** III.  Application of Section 6229 Special Statute of Limitations Rules

As we have found that respondent was not required to issue an FPAA for Lincoln's December 31, 2001, tax period, we next consider petitioners' argument that the statute of limitations under section 6501 bars assessment.  The statute of limitations is an affirmative defense and does not raise a jurisdictional issue.  See sec. 6213(a) (our jurisdiction to redetermine a deficiency depends on the issuance of a notice of deficiency and filing of a petition); Davenport Recycling Assocs. v. Commissioner, 220 F.3d 1255, 1259 (11th Cir. 2000), aff'g T.C. Memo. 1998-347; Columbia Bldg., Ltd. v. Commissioner, 98 T.C. 607, 611 (1992).  Thus, the Court would not lose jurisdiction even if petitioners are correct that the statute of limitations bars assessment.  As a result we will treat petitioners' statute of limitations argument as a motion for summary judgment.  A motion for summary judgment may be granted where the pleadings and other materials show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  The burden is on the moving party to show that there is no genuine dispute of material fact and he is entitled to judgment as a matter of law.  FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74-75 (2001).  In summary judgment cases the evidence is viewed in the light

**[\*30]** most favorable to the nonmoving party. <u>Bond v. Commissioner</u>, 100 T.C. 32, 36 (1993).

Section 6229 extends the period of limitations for assessment prescribed by section 6501 with respect to partnership and affected items. <u>See</u> sec. 6501(n)(2); <u>Rhone-Poulenc Surfactants & Specialities, L.P. v. Commissioner</u>, 114 T.C. 533, 540-543 (2000). It applies to assessments of tax "with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year." Sec. 6229(a). Under section 6229(a) the period of limitations for TEFRA partnerships is triggered by the later of (1) the filing of the partnership tax return or (2) the last day for filing the return. The timely mailing of an FPAA suspends the running of the limitations period for assessing any income tax that is attributable to any partnership item or affected item. <u>See</u> sec. 6229(d). The limitations period remains suspended for the period during which an action may be filed in court, during the pendency of any proceeding actually brought, and for one year thereafter. <u>Id.</u> For a non-TEFRA small partnership, however, the limitations period is generally triggered upon the filing of the partner's return, not the partnership return. <u>Wolf v. Commissioner</u>, 4 F.3d 709, 714 (9th Cir. 1993), <u>aff'g</u> T.C. Memo. 1991-212.

[*31] Petitioners do not dispute that the period of limitations would remain open if section 6229 applied. If section 6229 applied, the period of limitations for assessments with respect to the Sarma loss would expire one year after the District Court's decision became final, January 11, 2017. Rather, they argue that section 6229 special statute of limitations rules for TEFRA partnerships cannot apply for a small partnership exempt from TEFRA. They argue that section 6229 does not apply for Lincoln's December 31, 2001, tax period and the December 31, 2001, tax period was the only tax period during which Mr. Sarma owned a direct interest in Lincoln. They argue that the period of limitations under section 6501 has expired. We hold that the special statute of limitations rules for TEFRA partnerships under section 6229 apply for Lincoln's non-TEFRA December 31, 2001, tax period and extend the period of limitations for petitioners' 2001 tax year.

By its terms, section 6229 applies only to partnership or affected items. Petitioners argue that as a small partnership Lincoln Partners cannot have partnership or affected items and thus section 6229 does not apply. They argue a small partnership can have only nonpartnership items, citing Nehrlich v. Commissioner, T.C. Memo. 2007-88, aff'd, 327 F. App'x 712 (9th Cir. 2009), and Am. Milling, L.P. v. Commissioner, T.C. Memo 2015-192. According to petitioners, the Lincoln loss was a nonpartnership item of a small partnership. In

[*32] Nehrlich v. Commissioner, slip op. at 7, we wrote: "TEFRA then defines 'partnership' to exclude small partnerships * * * and this then excludes them from TEFRA procedures because a small partnership would have only nonpartnership items". Petitioners argue that in Am. Milling, L.P. we held that TEFRA partnerships have partnership items and by analogy a small partnership can have only nonpartnership items.

While petitioners may be correct that a small partnership may not have partnership or affected items flowing from it, a small partnership can have affected items from its participation in other TEFRA partnerships. A partnership item is "any item required to be taken into account for the partnership's taxable year under any provision of Subtitle A [Income Taxes] to the extent [the] regulations * * * provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." Sec. 6231(a)(3). A nonpartnership item is an "item which is (or treated as) not a partnership item." Id. para. (4). An affected item is any item to the extent it is affected by the determination of a partnership item. Id. para. (5). Generally, outside basis is an affected item. Woods, 571 U.S. at 41; Petaluma FX Partners, LLC v. Commissioner, 591 F.3d 649, 655 (D.C. Cir. 2010), aff'g in part, rev'g and remanding in part 131 T.C. 84 (2008); see sec. 301.6231(a)(5)-1(b), Proced. &

[*33] Admin. Regs. A computational adjustment is "the change in the tax liability of a partner which properly reflects the treatment * * * of a partnership item. All adjustments required to apply the results of a proceeding with respect to a partnership * * * to an indirect partner shall be treated as computational adjustments." Sec. 6231(a)(6).

Lincoln Partners was a TEFRA partnership and became a small partnership exempt from TEFRA for a subsequent tax period, i.e., the December 31, 2001, tax period. During the non-TEFRA small partnership tax period, Lincoln owned an interest in a TEFRA partnership, Kearney Partners. Lincoln's sale of the Kearney partnership interest generated the Lincoln loss that passed through to Mr. Sarma as Lincoln's partner during Lincoln's small partnership tax period. Lincoln's outside basis in Kearney is an affected item from the TEFRA partnership proceeding. Lincoln Partners was a direct partner and Mr. Sarma was an indirect partner of Kearney Partners during its TEFRA tax period, ending upon the sale of Lincoln's interest in Kearney, i.e., the December 19, 2001, TEFRA tax period. TEFRA applies to any entity with respect to any taxable year that files a partnership return and to any person holding an interest in such entity either directly or indirectly at any time during that taxable year. Sec. 301.6233-1(a), Admin. & Proced. Regs.

[*34] For purposes of TEFRA, an indirect partner is a partner.[9] See sec. 6231(a)(9) (defining passthrough partner) and (10) (defining indirect partner). An adjustment to an affected item from the TEFRA proceeding applies to an indirect partner.

Once a partnership item is determined the Commissioner may adjust items attributable to the partnership items to determine and change a partner's tax liability attributable to the partnership items. The adjustments may occur in tax periods following the periods at issue in the TEFRA proceeding. See Kligfeld Holdings v. Commissioner, 128 T.C. 192, 199-207 (2007). The adjustment to the Lincoln loss, which passed through to Mr. Sarma (Sarma loss), resulted from the Kearney TEFRA proceeding. Kearney's December 19, 2001, TEFRA tax period ended within Lincoln's December 31, 2011, small partnership tax period and petitioners' 2001 tax year. Thus, the TEFRA decision enters into Lincoln's computation of its gain or loss on the sale of its Kearney partnership interest during its December 31, 2001, tax period even though Lincoln was a small partnership during that tax period and even though Lincoln's December 31, 2001, tax period was not at issue in Kearney. The fact that Lincoln was a small

_____

[9]A partner is defined as either (1) a partner in the partnership or (2) any other person whose income tax liability is determined directly or indirectly by taking partnership items into account. Sec. 6231(a)(2).

[*35] partnership during the tax period in which it sustained the subject loss is not relevant.

Mr. Sarma was a partner in Lincoln during Kearney's TEFRA tax period when the Lincoln loss arose, the December 19, 2001, tax period, and over which the District Court had jurisdiction. Accordingly, he was a person to which a partnership item or an affected item was attributable. Thus, the Kearney decision can result in affected items to Mr. Sarma and may affect his 2001 tax liability. Lincoln's outside basis in Kearney Partners is an affected item. It affected the amount of Lincoln's loss on the sale of Kearney. The loss passed through to Mr. Sarma as a partner in Lincoln, and he deducted his share of the Lincoln loss, i.e., the Sarma loss. The Sarma loss is attributable to the partnership items determined in Kearney.

Section 6229 extends the period of limitations for assessing tax attributable to partnership items and affected items following the conclusion of a TEFRA proceeding. It applies to determine the period of limitations to assess tax against the partners attributable to the partnership items and affected items. Those affected items arose in Lincoln's December 31, 2001, tax period when it was a small partnership. Accordingly, section 6229 can apply to a non-TEFRA small partnership where the small partnership has affected items from a TEFRA

[*36] proceeding. It extends the limitations period to assess tax attributable to the affected items with respect to Mr. Sarma because he was an indirect partner in Kearney Partners for the TEFRA tax periods irrespective of the fact that the loss passed through to Mr. Sarma during Lincoln's non-TEFRA tax period. Accordingly, the period of limitations has not expired for petitioners' 2001 through 2004 tax years with respect to the Sarma loss, and we will deny petitioners' motion with respect to their statute of limitations argument.

IV.    Partner-Level Determination

We next address respondent's motion to dismiss for lack of jurisdiction. Under section 6226(f) a court's jurisdiction in a TEFRA partnership-level proceeding extends to all partnership items for the partnership taxable year to which the FPAA relates, the proper allocation of the partnership items among the partners, and the applicability of any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item. Once the partnership-level adjustments become final, the Commissioner must initiate further action at the partner level to make any resulting adjustments to the tax liabilities of the individual partners. The Commissioner must follow the deficiency notice procedures under sections 6211 through 6216 for adjustments attributable to affected items that require partner-level determinations. Sec. 6230(a)(2)(A)(i);

[*37] sec. 301.6231(a)(6)-1(a)(3), Proced. & Admin. Regs.  In such a case the partner has a prepayment forum to challenge the Commissioner's determination. Sec. 6230(a)(2)(A)(i).

The deficiency notice procedures do not apply to an adjustment to an affected item that does not require a partner-level determination. Id. para. (1).  If no partner-level determination is required, the adjustment is computational and the Commissioner can directly assess the resulting tax deficiency against each partner without issuing a notice of deficiency. Id.; sec. 301.6231(a)(6)-1(a)(2), Proced. & Admin. Regs.  The partner would not have access to the deficiency procedures to challenge the Commissioner's computational adjustments.  Instead, he must file a claim for refund and rely on refund litigation if the refund claim is denied. See sec. 6230(a)(1), (c)(4).

Respondent moves for dismissal, arguing that the adjustments at issue are computational and do not require any partner-level determinations on the basis of the decision in Kearney that Kearney Partners was a sham for its December 19, 2001, tax period.  He argues that Lincoln's outside basis in the sham Kearney partnership must be zero without any further partner-level determinations and thus Lincoln could not have sustained a loss on the sale of its Kearney partnership interest to pass through to Mr. Sarma.  According to respondent, the deficiency

[*38] procedures do not apply, the 2016 notice is invalid, and we should dismiss on the basis of lack of jurisdiction. Respondent directly assessed tax against petitioners attributable to the disallowance of the Sarma loss deduction and issued the 2016 notice as a protective measure.

Petitioners argue that outside basis must be determined at the partner level and not assumed to be zero irrespective of the decision in a partnership-level case that the partnership was a sham. They argue that a computational adjustment means only an adjustment that can be made with a mathematical computation. They also renew their argument that the Lincoln loss and its outside basis in Kearney Partners are nonpartnership items on the basis that Lincoln cannot have any affected items from TEFRA because Lincoln was a non-TEFRA small partnership for its December 31, 2001, tax period. We have found that a small partnership that owns an interest in a TEFRA partnership can have affected items from the TEFRA partnership, and we will not revisit this argument. The issue is whether a partner-level determination is required to adjust a purported partner's outside basis in a sham partnership to zero.

A partner's outside basis in his partnership interest is "an affected item to the extent it is not a partnership item." Sec. 301.6231(a)(5)-1(b), Proced. &

**[\*39]** Admin. Regs.  Following disagreement among the Courts of Appeals,[10] the Supreme Court decided that a court in a partnership-level TEFRA proceeding has jurisdiction to provisionally determine an accuracy-related penalty relating to the portion of any underpayment that is attributable to a valuation misstatement of outside basis.  Woods, 571 U.S. 31.  The Supreme Court recognized that a partner's outside basis is a nonpartnership item that the courts do not have jurisdiction to adjust in a TEFRA partnership-level proceeding.  Id. at 41.  Outside basis must be adjusted at the partner level.  Id.  However, it reasoned that "once the partnerships were deemed not to exist for tax purposes, no partner could legitimately claim an outside basis greater than zero", id. at 44, and the court in a partnership-level proceeding where the partners' liability for a penalty is at issue is "not required to shut its eyes to the legal impossibility of any partner's possessing an outside basis greater than zero in a partnership that, for tax purposes, did not exist", id. at 42.  Thus, a court has jurisdiction to determine the penalty "even if

---

[10]Thompson v. Commissioner, 729 F.3d 869, 872 (8th Cir. 2013), rev'g and remanding 137 T.C. 220 (2011); Jade Trading, LLC v. United States, 598 F.3d 1372, 1380 (Fed. Cir. 2010); Petaluma FX Partners, LLC v. Commissioner, 591 F.3d 649, 655 (D.C. Cir. 2010), aff'g in part, rev'g and remanding in part 131 T.C. 84 (2008); Tigers Eye Trading, LLC v. Commissioner, 138 T.C. 67, 117 (2012), aff'd in part, rev'd in relevant part sub nom. Logan Tr. v. Commissioner, 616 F. App'x 426 (D.C. Cir. 2015).  These cases, with the exception of Thompson, each involved a court's jurisdiction in a partnership-level proceeding.  Here we determine our jurisdiction in a partner-level case.

**[*40]** imposing the penalty would also require determining affected or non-partnership items such as outside basis." Id. at 41. However, a court would not have jurisdiction to "make a formal adjustment" to the partner's outside basis. Id. at 42; see also Logan Tr. v. Commissioner, 616 F. App'x. 426, 429 (D.C. Cir. 2015), aff'g in part, rev'g in relevant part Tigers Eye Trading, LLC v. Commissioner, 138 T.C. 67 (2012); Petaluma FX Partners, LLC v. Commissioner, 591 F.3d at 654-655.

Respondent attempts to distinguish an impermissible adjustment of outside basis from a determination that outside basis in a sham partnership is zero. The determination of whether a TEFRA partnership is a sham or bona fide is a partnership item properly made at the partnership level. Petaluma FX Partners, LLC v. Commissioner, 591 F.3d at 652-654. Respondent argues that once a partnership-level case determines the partnership was a sham, the adjustment of outside basis to zero does not require a partner-level determination. In dicta, responding to a point raised in an amicus brief, the Supreme Court in Woods observed that where a partnership is a sham and disregarded for tax purposes, the determination of the partner's outside basis may not require a partner-level determination to adjust outside basis and thus the adjustment may be computational. Woods, 571 U.S. at 42 n.2. The Court stated that the amici's

[*41] argument "assumes that the underpayment would not be exempt from deficiency proceedings because it would rest on outside basis." Id. The Court further observed: "Even an underpayment attributable to an affected item is exempt so long as the affected item does not 'require partner-level determinations,' * * * and it is not readily apparent why additional partner level determinations would be required before adjusting outside basis in a sham partnership." Id. (citations omitted).

Woods did not, however, answer the question of whether the partner-level adjustment of outside basis incident to a deficiency determination is computational and the Commissioner may directly assess the resulting tax against the purported partners or whether the adjustment requires a partner-level determination and the issuance of a notice of deficiency. We have stated that Woods provided "no direct answer" to this question. Thompson v. Commissioner, T.C. Memo. 2014-154, at *7 n.4, aff'd, 821 F.3d 1008 (8th Cir. 2016). We have also suggested in dicta that in cases involving sham, disregarded partnerships, an adjustment to zero of a purported partner's outside basis does not require "further partner-level determinations" because outside basis is automatically zero. Greenwald v. Commissioner, 142 T.C. 308, 316 (2014). Greenwald involved a bona fide partnership where a partner-level determination would be required to determine

**[\*42]** outside basis.  However, in Greenwald we relied on Tigers Eye Trading,
LLC v. Commissioner, 138 T.C. 67, which was subsequently reversed.  Logan Tr.
v. Commissioner, 616 F. App'x 426.

At the outset we note that partner-level determinations are clearly necessary
relating to the tax treatment of the assets distributed in a liquidation from a sham
partnership irrespective of the fact that the partnership is a sham.  Napoliello v.
Commissioner, 655 F.3d 1060 (9th Cir. 2011), aff'g T.C. Memo. 2009-104;
Domulewicz v. Commissioner, 129 T.C. 11, 20 (2007), aff'd in part, rev'd in part
sub nom. Desmet v. Commissioner, 581 F.3d 297 (6th Cir. 2009).  Partner-level
determinations are required regarding the reporting of the subsequent disposition
of the distributed assets by the purported partners, including the partners' holding
periods of the assets, the character of the gain or loss on the disposition of the
assets, and whether the disposed assets were in fact the assets distributed by the
sham partnership.  Domulewicz v. Commissioner, 129 T.C. at 20.  In this case
there was no liquidating distribution of assets from a sham partnership.

When a court in a partnership-level case holds that a partnership is a sham,
the logical conclusion is that the purported partners would not have outside bases
in the sham partnership greater than zero that would allow the purported partners
to claim loss deductions on the sale of their partnership interests.  A taxpayer

[*43] cannot have a basis in an asset that does not exist for Federal tax purposes. Woods, 571 U.S. at 41; Logan Tr. v. Commissioner, 616 F. App'x at 429 (where a partnership is a sham and "never existed, * * * no partner could have any outside basis in the entity"); Greenwald v. Commissioner, 142 T.C. at 314-315. This conclusion, however, does not confer jurisdiction on the Court in a partnership-level case to determine outside basis. Woods, 571 U.S. at 41. We note that the District Court in Kearney did not make any findings with respect to Lincoln's outside basis in Kearney Partners; it was without jurisdiction to make any such findings.

Under section 6226(f) a court reviewing a petition for readjustment of partnership items generally has jurisdiction to determine "partnership items * * * [and] the proper allocation of such items among the partners". However, in the limited instance of an accuracy-related penalty relating to outside basis, section 6226(f) specifically grants the Court jurisdiction to provisionally impose the penalty that "relates to an adjustment to a partnership item" even though the penalty may depend on partner-level determinations. Thus, the Court can provisionally determine the penalty on the basis of another determination that it does not have jurisdiction to make.

**[\*44]** The Supreme Court recognized that "every penalty must be imposed in partner-level proceedings after partner-level determinations". <u>Woods</u>, 571 U.S. at 41. Likewise, the determination of a partner's outside basis can be made only at the partner level after partner-level determinations. <u>Thompson v. Commissioner</u>, 729 F.3d 869, 872 (8th Cir. 2013); <u>Petaluma FX Partners, LLC v. Commissioner</u>, 591 F.3d at 654-655 (acknowledging a sham partnership results in an outside basis of zero but holding that the court in a partnership-level case does not have jurisdiction to determine outside basis). A partner-level determination is required even where the partnership is a sham.

While the Supreme Court's dicta in <u>Woods</u> gives us pause, we conclude that the adjustment of outside basis in a sham partnership requires a partner-level determination. No Court of Appeals has discussed the question of whether the adjustment of outside basis could be computational. At this late date in the life of the TEFRA partnership provisions, it would be unwise for us to introduce uncertainty in the application of this well-worn law.[11] It is logical, as the Supreme Court suggests, to conclude Lincoln's outside basis in its Kearney partnership interest was zero. If so, Lincoln could not have incurred a loss on the sale of its

---

[11]Congress repealed the TEFRA procedures in the Bipartisan Budget Act of 2015, Pub. L. No. 114-74, sec. 1101(a), 129 Stat. at 625.

[*45] Kearney partnership interest to pass through to Mr. Sarma. "Neither the Code nor the regulations * * * require that partner-level determinations actually result in a substantive change to a determination made at the partnership level." Domulewicz v. Commissioner, 129 T.C. at 20. The adjustment to outside basis is made at the partner level and requires a partner-level determination. Accordingly, the 2016 notice is valid, and we will deny respondent's motion to dismiss.

Petitioners advance a number of objections relating to the Kearney decision and argue that its findings are irrelevant and erroneous, resulting in a need for partner-level determinations. It appears that petitioners seek to relitigate the issues decided in Kearney; they have yet to identify any component of outside basis left unresolved after Kearney Partners was held to be a sham or to articulate a position for the Court to find that Lincoln's outside basis in Kearney was greater than zero. They argue that the District Court did not have jurisdiction over Mr. Sarma because he was not a party in that case, Mr. Sarma opted out of Kearney, and finally Kearney supports the deduction of the Sarma loss because the District Court reallocated the gain and loss from the FX straddles to Mr. Sarma in his individual capacity after holding the three partnerships were shams. They also argue that Sarma I supports their position that Mr. Sarma was not a partner during the TEFRA tax periods and is not bound by Kearney.

[*46] As explained the Kearney decision may result in adjustments to affected items for tax periods over which the District Court lacked jurisdiction. The decision may change a partner's tax liability in a tax period different from the period at issue in the TEFRA proceedings. See Kligfeld Holdings v. Commissioner, 128 T.C. at 199-207. In Sarma I the parties merely stipulated that petitioners did not concede they had an interest in Kearney or concede that it could affect their tax liabilities for 2001 through 2004. Mr. Sarma did not have the right to opt out of TEFRA because he was not a notice partner with the right to receive the NBAP. See sec. 6223(e) (providing notice partners with statutory rights where an NBAP is not timely issued). The District Court held that Mr. Sarma did not elect to opt out of TEFRA. Kearney, 2013 WL 1232612 at *5-*7. Although respondent mistakenly included a letter in the FPAA stating that Mr. Sarma had a right to opt out of TEFRA because of an untimely NBAP, he later informed Mr. Sarma of this mistake. As no FPAA is required for Lincoln's December 31, 2001, tax period, no right to opt out of TEFRA can arise.

Petitioners argue in the alternative that Kearney supports their entitlement to loss deductions because the District Court sustained the FPAA adjustments and reallocated the income and loss from the FX straddles to Mr. Sarma in his individual capacity. Accordingly, they argue that Mr. Sarma had bases in the FX

[*47] straddles to claim loss deductions on the transactions. We reject petitioners' characterization of Kearney; it did not reallocate the FX straddle income and losses to Mr. Sarma. The District Court sustained the adjustments in the FPAAs, which included reallocation of the gain and loss from the FX straddles to Mr. Sarma. Petitioners argue that in the FPAAs respondent recognized the FX straddles for tax purposes. However, the District Court found that the FX straddles were shams and disregarded for Federal tax purposes. In its judgment the District Court held the portion of the FPAAs that reallocated the income and loss to Mr. Sarma to be moot. Accordingly, the District Court did not reallocate the income and loss from the FX straddles to Mr. Sarma.

V.   Multiple Notices of Deficiency

Generally the Commissioner is precluded from issuing more than one notice of deficiency for a taxable year. Sec. 6212(c). An exception to the one deficiency notice rule exists for affected items that require partner-level determinations. Sec. 6230(a)(2)(C). Petitioners argue that the Sarma loss is not an affected item and not a computational adjustment. They argue that respondent was precluded from issuing the 2016 notice because it is an invalid further notice of deficiency for 2001 through 2004. For the reasons stated above, the Sarma loss deduction is an

**[\*48]** affected item that requires a partner-level determination.  The exception applies.  Accordingly, respondent is not precluded from issuing the 2016 notice.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.